## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
378 North Main Avenue,
Tucson, AZ 85701,

      *Plaintiff*,

   v.

OFFICE OF MANAGEMENT AND BUDGET,
725 17th Street NW
Washington, DC 20503,

U.S. DOGE SERVICE (U.S. DIGITAL
SERVICE),
736 Jackson Pl NW
Washington, DC 20503,

U.S. DOGE SERVICE TEMPORARY
ORGANIZATION,
736 Jackson Pl NW
Washington, DC 20503,

ELON MUSK, in his official capacity as Agency
Head of the U.S. DOGE SERVICE and U.S.
DOGE TEMPORARY ORGANIZATION,
736 Jackson Pl NW
Washington, DC 20503,

AMY GLEASON, in her official capacity as
Acting Administrator of the U.S. DOGE
SERVICE and U.S. DOGE TEMPORARY
ORGANIZATION,
736 Jackson Pl NW
Washington, DC 20503,

      *Defendants*.

Civil Action No: 1:25-cv-00165-BAH

**SECOND AMENDED COMPLAINT**

**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     The Center for Biological Diversity (the Center) brings this action to compel the

United States Office of Management and Budget (OMB) and the United States DOGE Service

(DOGE) and the United States DOGE Service Temporary Organization (DOGETO)component

agencies within OMB to disclose records under the Freedom of Information Act, 5 U.S.C. § 552,

as amended (FOIA). The records at issue include certain presidential transition documents that

concern OMB's key functions and duties as well as records regarding, among other matters, the

staffing, calendars, and communications of the renamed and reformed United States Digital

Service now the United States DOGE Service (DOGE) and the United States DOGE Service

Temporary Organization (DOGETO), which affect air and water quality; climate change;

imperiled plants and wildlife; public lands; and environmental justice issues. These records are

subject to FOIA, and their relevance is extremely time sensitive given DOGE's ongoing efforts

to refashion the federal government and workforce in fundamental ways with no or minimal

transparency. FOIA was designed to ensure that monumental and consequential undertakings

such as this could not take place without transparency. Yet that is what is occurring as

Defendants are engaging in wholesale disregard for FOIA's pro-disclosure mandate. In the

absence of judicial intervention, they will continue to do so. Specifically, President Trump

established DOGE to repeal, rescind, and otherwise eliminate various facets of the federal

government in the name of cost-cutting. Given the substantial protections for air and water,

wildlife and nature, climate, public lands, and the environment generally implemented through

federal staff and regulations, the Center and its members are deeply interested in, and affected by,

how the stated mission for DOGE and its related activities could harm, undermine, or negate the Center's longstanding efforts to protect the environment and the livability of our planet. Thus, Plaintiff initially sought under FOIA, but OMB has to date failed to produce: 1) any records relating to the presidential transition and interactions between DOGE, Mr. Elon Musk, Mr. Vivek Ramaswamy, or any others acting on their behalf and OMB or its Office of Information and Regulatory Affairs (OIRA) regarding deregulation, or the repeal or recission of regulations, executive orders, and/or the issuance of potential directives once the new administration took office; and 2) DOGE and DOGETO staff lists, calendars, and communications with entities outside the federal government as well as with certain staff within the White House.

2. Plaintiff's initial FOIA request specifically includes any records pertaining to implementing a ratio for reducing regulations wherein two, ten or some other number of regulations are slated for elimination for every one adopted during the Trump administration. It also includes all transition materials sent to or received by OMB referencing the Department of Government Efficiency, DOGE, Elon Musk, or Vivek Ramaswamy. These records are important for the public to understand the threats to numerous environmental protections embodied in rules and orders and how, when, and under what circumstances the new administration intends to act on these threats.

3. Plaintiff's request for lists of staff, calendars, and certain communications by DOGE and DOGETO will illuminate how these entities are operating and shed light on the proper entities for public outreach regarding specific regulatory and workforce dismantling efforts.

4.    The Center submitted its FOIA request to OMB on December 9, 2024, and a FOIA determination on this request was due by January 10, 2025. However, the Center has not received a determination or any responsive records to date.

5.    The Center submitted ~~three~~ four additional FOIA requests on ~~January 27~~March 13, 2025 seeking additional information regarding DOGE and DOGETO's efforts to dismantle and restructure the federal government. These requests were sent directly to DOGE/DOGETO. Determinations on these requests were due by ~~February 25~~April 10, 2025. However, in violation of FOIA, the Center has not received a FOIA determination or any responsive records to date.

6.    As discussed below, Defendants are also in violation of FOIA's affirmative disclosure mandates. Those require, among other obligations, that agencies inform the public as to the various categories of information available for public scrutiny and the specific means of requesting information under FOIA. 5 U.S.C. §§ 552(a)(1), (g). Defendants' failure to do so regarding DOGE and DOGETO violates FOIA and constitutes agency action that has been unlawfully withheld and unreasonably delayed, in violation of Section 706(1) of the APA, 5 U.S.C. § 706(1).

7.    Prompt access to these records is necessary to realize FOIA's purpose of transparency in government operations. FOIA establishes clear deadlines and requirements for FOIA responses and the APA forecloses agencies from unreasonably delaying agency action required by law. Thus, Defendants are in violation of these statutory duties. Therefore, through this Complaint, the Center seeks: (1) declaratory relief establishing that OMB, DOGE, and DOGETO violated FOIA and the APA; (2) injunctive relief ordering these entities to make an immediate determination on the Center's FOIA requests and promptly release all requested records and information, including all reasonably segregable portions of any lawfully exempt

records, by a date certain; and (3) an Order compelling DOGE and DOGETO to comply with

FOIA's affirmative disclosure mandates.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B),

28 U.S.C. § 1331, and 5 U.S.C. §§ 702, 706.

9.     This Court has authority to grant the requested declaratory relief pursuant to 28

U.S.C. § 2201 and 5 U.S.C. § 706; authority to grant the requested injunctive relief pursuant to 5

U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202; and otherwise provide relief using the court's

equitable powers.

10.     Venue is proper in this Court because this case is brought under FOIA and the

APA because OMB's office and the requested records are located in this district. 5 U.S.C.

§ 552(a)(4)(B); 28 U.S.C. § 1391(e)(1). Venue is proper in the District of Columbia under the

APA pursuant to 28 U.S.C. § 1391(e), as this civil action is brought against officers and

employees of the United States acting in their official capacities and under the color of legal

authority, a substantial part of the events giving rise to the claim occurred in the District of

Columbia, no real property is involved in this action.

## PARTIES

11.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the Center) is a nonprofit

organization with offices and staff throughout the United States. The Center works through

science, law, and policy to maintain and increase protections for air and water; plants, animals,

and their native habitats; a livable climate; public lands; and healthy communities. The Center

has more than 79,000 active members throughout the United States and the world.

12.     The Center is the requester of the information and records at issue. The organization and its members are harmed by OMB's failure and its subcomponent DOGE and DOGETO's failures to disclose the requested information and records that are responsive to the Center's FOIA Requests. These violations of law preclude the Center from understanding important information about plans for eliminating staff, rules and orders that currently protect air and water, wildlife and nature, public lands, the climate, and vulnerable communities and if and how such plans will be carried out and implemented.

13.     This information and the Center's subsequent analyses of it will help to inform and prioritize the Center's organizational mission, including determining where to direct resources and develop alternate strategies. The Center will also share the requested information with its members and the public in general to keep them informed about mounting threats to clean air and water, wildlife and nature protections, public lands, climate, and vulnerable communities and potential avenues for response. The requested records and information will also be used to inform Congressional representatives and their staffs about threats to the environment.

14.     The Center's interests and activities are adversely affected by OMB's failure and its subcomponent DOGE and DOGETO's failures to disclose the requested records. This injury will be redressed if the Court orders OMB as well as DOGE and DOGETO to disclose the requested records.

15.     The Center and its members are further harmed by DOGE and DOGETO's failure to comply with FOIA's affirmative disclosure mandates, including that DOGE and DOGETO publish where the public "may obtain information, make submittals or requests, or obtain decisions" from them, and provide for "public inspection" of "reference material or a guide for requesting records or information from the agency."

16.     Defendant OFFICE OF MANAGEMENT AND BUDGET (OMB) is an administrative agency within the Office of the President of the United States. OMB reports directly to the President and serves to implement the President's vision and priorities across all federal departments and agencies. To this end, OMB plays a central role in developing and executing the federal government's budget and overseeing federal agency programs, rules, and procedures. It also oversees and coordinates the Executive Office's regulatory policies as well as its policies relating to procurement, financial management, and information management. OMB possesses and controls the records the Center seeks, and the agency is subject to FOIA. *See* 5 U.S.C. § 552(f) (defining "agency" to include "any executive department … or other establishment in the executive branch of the Government (including the Executive Office of the President))."

17.     A subcomponent of OMB, the Office of Information and Regulatory Affairs (OIRA) is comprised of six subject matter branches and is led by the OIRA Administrator, who is appointed by the President and confirmed by the U.S. Senate. OIRA is a part of OMB and in possession, custody, or control of the records sought by the Center, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f).

18.     ~~A subcomponent agency of OMB,~~ Defendant the UNITED STATES DEPARTMENT OF GOVERNMENT EFFICIENCY (DOGE) Service, or as it is now known the United States DOGE Service (USDS), is the reconfigured United States Digital Service (hereafter DOGE). <u>The original USDS was established as a subcomponent agency of OMB. DOGE</u>~~It~~ was established by Executive Order 14158 on *Establishing and Implementing the President's "Department of Government Efficiency,"* 90 Fed. Reg. 8441 (Jan. 20, 2025). The renamed DOGE is charged with implementing the President's DOGE Agenda focusing initially

on modernizing federal technology and software, E.O. 14158 Section 1, including through the establishment of DOGE Teams in federal agencies. Following a February 11, 2025, Executive Order, DOGE is also engaged in "workforce optimization" including DOGE Team consultations on hiring and monthly reporting. *See* E.O. 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025). A February 19 Executive Order also engages DOGE in the review and recission of federal regulations. E.O. 14219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, 90 Fed. Reg. 10,583 (Feb. 19, 2025). In light of the nature of USDS/DOGE activities, USDS/DOGE is wielding substantial authority independent of any role advising or assisting the President.

19.    ~~A subcomponent agency of OMB,~~ Defendant the UNITED STATES DOGE SERVICE TEMPORARY ORGANIZATION (DOGETO) was established by Executive Order 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025), relying upon the authority to create such organizations in 5 U.S.C. § 3161. DOGETO is headed by the USDS Administrator and is "dedicated to advancing the President's 18-month DOGE agenda," and "will terminate on July 4, 2026." E.O. 14158, Section 3(b). In light of the nature of DOGETO activities, DOGETO is wielding substantial authority independent of any role advising or assisting the President.

20.    Defendant ELON MUSK, is sued in his official capacity as Agency Head of the U.S. DOGE SERVICE and U.S. DOGE TEMPORARY ORGANIZATION. The President has announced that Mr. Musk is heading and directing DOGE and on information and belief he is in fact directing the activities of DOGE and DOGETO, particularly those relating to dramatically reducing the federal workforce and implementing drastic changes in the functions and activities

of federal agencies. In light of the nature of ELON MUSK's activities, he is wielding substantial authority independent of any role advising or assisting the President.

21.    Defendant AMY GLEASON is sued in her official capacity as Acting Administrator of the U.S. DOGE SERVICE and U.S. DOGE TEMPORARY ORGANIZATION. The Administrator reports to the White House Chief of Staff and is responsible for, among other actions, consulting on the establishment of DOGE teams, undertaking a Software Modernization Initiative, working with Agency Heads to promote inter-operability of agency systems and data, and ensuring access to records and software and IT systems among other responsibilities. In light of the nature of AMY GLEASON's activities, she is wielding substantial authority independent of any role advising or assisting the President.

## STATUTORY BACKGROUND

22.    FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply, *id*. § 552(b).

23.    FOIA imposes strict and rigorous deadlines for agencies to respond to FOIA requests for specific information. Within 20 business days of receiving a request, an agency must (1) determine if it will release the requested records and (2) notify the requester of (a) its determination and reasons for it, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse determination. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

24.    FOIA provides only limited circumstances under which a federal agency may take longer than 20 business days to make a determination. First, the agency may toll the 20 business

day deadline for up to ten additional business days while the agency is waiting for the

information that it has reasonably requested from the requester. 5 U.S.C. § 552(a)(6)(A)(ii)(I).

Second, the agency may also toll the 20 business day deadline for up to ten additional business

days if it needs to clarify with the requester any issues regarding fee assessment. 5 U.S.C. §

552(a)(6)(A)(ii)(II). Additionally, if the agency faces "unusual circumstances," the agency may

extend the 20 business day deadline if the agency sets "forth the unusual circumstances for such

extension and the date on which a determination is expected to be dispatched." 5 U.S.C. §

552(a)(6)(B)(i). No extension will exceed ten business days unless the agency provides written

notice to the requester explaining the "unusual circumstances" requiring an extension, establishes

the date on which the agency expects to make the determination, and gives the requester "an

opportunity to limit the scope of the request so that it may be processed within that time limit or

an opportunity to arrange with the agency an alternative time frame for processing the request or

a modified request." 5 U.S.C. § 552(a)(6)(B)(ii). Under FOIA, "unusual circumstances" are

defined as "the need to search for and collect the requested records from field facilities or other

establishments that are separate from the office processing the request[,]" or "the need to search

for, collect, and appropriately examine a voluminous amount of separate and distinct records

which are demanded in a single request," or "the need for consultations . . . with another agency

having a substantial interest in the determination of the request or among two or more

components of the agency having substantial subject-matter interest therein." 5 U.S.C. §

552(a)(6)(B)(iii).

25.    Unless an agency subject to FOIA properly establishes a different timeline for

disclosing responsive records, according to the above provisions, FOIA's mandate to make public

records "promptly available" to a requester requires federal agencies to provide responsive

records to a requester within or shortly after the 20-day deadline set forth in 5 U.S.C. § 552(a)(6)(A)(i).

26.     Agencies must make a reasonable effort to maintain and search for records so all responsive records can be identified and reproduced. 5 U.S.C. § 552(a)(3)(B)–(D).

27.     In certain limited instances, an agency may withhold responsive records pursuant to nine specific statutory exemptions. 5 U.S.C. § 552(b). These exemptions are narrowly construed given FOIA's primary objective of disclosure of information, not secrecy.

28.     An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. 5 U.S.C. §552(a)(4)(B). Even where records may be exempt from disclosure, FOIA expressly requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(b).

29.     FOIA grants this Court jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

30.     In addition to requiring agencies to respond to requests for specific information, FOIA imposes obligations on all agencies to proactively make certain information available to the public. Section (a)(1) requires that "[e]ach agency shall separately state and currently publish in the Federal Register for the guidance of the public" various categories of information, including "descriptions of its central and field organization and the established places at which, the employees [] from whom, and the methods where, the public may obtain information, make submittals, or requests, or obtain decisions." -5 U.S.C. § 552(a)(1)(A). Section (g) requires each agency to "prepare and make available for public inspection in an electronic format, reference material or a guide for requesting records or information from the agency," including "an index

11

of all major information systems," a description of major information and record locator systems maintained by the agency," and "a handbook for obtaining various types and categories of public information from the agency" under FOIA. *Id*. § 552(g).

31.    FOIA imposes additional obligations on federal agencies to facilitate the disclosure of information to the public, including the issuance of regulations for requesting fee waivers in connection with requests for specific records, 5 U.S.C. § 552(a)(4)(A), and the issuance of regulations providing for expedited processing of requests for records, *id*. § 552(a)(6)(E). Each agency is also required to "designate a Chief FOIA Officer" who, among other duties, shall "have agency-wide responsibility for efficient and appropriate compliance with this section." *Id*. § 552(j).

32.    For purposes of FOIA, an "agency" as "defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1).

## ADMINISTRATIVE PROCEDURE ACT

33.    The APA provides a cause of action to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Under the APA, an agency action includes an agency's "failure to act." *Id.* §§ 551(13), 701(b)(2).

34.    An agency is defined as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" subject to eight exemptions. 5 U.S.C. §§ 551(1), 701(b)(1).

35.     Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2).

36.     The APA requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

### DECEMBER 9, 2024 REQUEST TO OMB

37.     The Center sent a FOIA request to OMB on December 9, 2024, requesting three categories of presidential transition materials:

1.     The transition materials, as part of the transition process from the Biden administration to the Trump transition office by the staff or designated officials within the OMB assigned to coordinate the transition process, sent to or received by Elon Musk, any individual employed by Tesla, Inc. SpaceX, Inc. X Inc, or Nuerolink, Inc., or any affiliated business entity or legal representative thereof, or requested by a representative of the Trump transition office mentioning, discussing, or documenting issues about:

   a.     Schedule F;

   b.     The civil service;

   c.     The final rule "Upholding Civil Service Protections and Merit System Principles" [89 Fed. Reg. 24,982 (Apr. 9, 2024)]; and/or

   d.     5 CFR Parts 210, 212, 213, 302, 432, 451, 752.

2.     The transition materials, as part of the transition process from the Biden administration to the Trump transition office by the staff or designated officials within the OMB assigned to coordinate the transition process, sent to or received by any person associated with, representing, or otherwise affiliated with a "Department of Government Efficiency" or "DOGE" or who purports to represent Elon Musk or Vivek Ramaswamy in relation to the "Department of Government Efficiency" or "DOGE" about issues under the

purview of the OMB or the Office of Information and Regulatory Affairs ("OIRA") about deregulation, or the repeal or recission of regulations, executive order, and/or other directive to implement a 10:1 or 2:1 or other ratio for reducing regulations; and

3.  Any additional transition materials sent to or received by the OMB referencing the "Department of Government Efficiency," "DOGE," "Elon Musk," or "Vivek Ramaswamy."

38.    OMB acknowledged the Center's FOIA request by electronic mail on December 10, 2024, assigning it tracking number 2025-350.

39.    Pursuant to FOIA, OMB was required to make a determination on the Center's FOIA request by January 10, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

40.    After receiving no further communication from OMB, the Center sent the agency a letter on January 9, 2025, reminding it of its obligations and deadline, requesting an estimated completion date, and offering assistance to facilitate OMB's prompt response.

41.    OMB responded on January 14, 2025, that it initiated a search but that the Center's FOIA request has been added to the OMB FOIA backlog.

42.    OMB failed to indicate a date by which it would produce or start to produce responsive records or any determination.

43.    To date, the Center has received no responsive records.

44.    More than 21 business days have passed without a determination or release of any records from OMB, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

45.    OMB has not requested additional information from the Center about its FOIA request, *see* 5 U.S.C. § 522(a)(6)(A), 5 C.F.R. § 1303.40(a), nor has it notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, *id.* § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

46.     OMB's failure to make a timely determination and "promptly" provide all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government.

47.     OMB plays a key role in the development and implementation of federal policies, regulations, and budgets, and the requested records will shed valuable light on any directives or communications with OMB regarding DOGE and its objectives, which will shed light on the new administration's intended operations and responses as they take office.

48.     The Center has substantial, demonstrated interests in OMB's development and oversight of federal regulations, policies, programs, and budgets, particularly as these relate to air and water quality; climate change, imperiled plants and wildlife; public lands; environmental justice; and other issues at stake.

**DOGE AND DOGETO**

49.     The original United States Digital Service (USDS) housed within OMB was formulated to improve agency digital services starting with health care and then including veteran services, Internal Revenue Service, Social Security and other federal government programs as well as responding to crises such as working with the Centers for Disease Control and Prevention during the Covid-19 pandemic to strengthen public health data capabilities and deliver tests.

49.50.  On January 20, 2025, Executive Order 14158 renamed the United States Digital Service (USDS) the United States Department of Government Efficiency (DOGE) Service and tasked DOGE with implementing the President's DOGE Agenda. It also established a USDS Administrator who reports to the White House Chief of Staff.

51.    The USDS Administrator is tasked with consulting with agency heads on selecting the members of the DOGE Teams.

~~50.~~52.  Following a February 11, 2025, Executive Order, DOGE is also engaged in "workforce optimization."

~~51.~~53.  Following a February 19, 2025, Executive Order, DOGE is also engaged in the review and recission of federal regulations.

~~52.~~54.  The United States DOGE Service Temporary Organization (DOGETO) was established by Executive Order 14158, "to advanc[e] the President's 18-month DOGE agenda." E.O. 14158, Section 3(b).

~~53.~~55.  DOGE and DOGETO are coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, spending, staffing, and rescinding federal regulations.

~~54.~~56.   DOGE and DOGETO are also establishing, implementing, and influencing government policy and decisionmaking throughout various agencies in the federal government.

~~55.~~57.  Overall, the acts of DOGE and DOGETO purportedly to increase efficiency and reduce alleged "government waste" are negatively impacting clean air and water, wildlife and nature protections, public lands, climate, and vulnerable communities.

~~56.~~58.  For example, the United States Agency for International Development ("USAID"), which among other things ran a biodiversity program that helped protect some of the most important ecosystems and tropical rainforests as well as imperiled species across the world was effectively shuttered by DOGE and DOGETO.

~~57.~~59.  Similarly, DOGE and DOGETO's work to reduce federal staff have already led to or contributed to approximately 2,300 federal probationary workers at the Department of the

Interior being terminated. These efforts have resulted in hundreds or in some cases thousands of federal employees losing their jobs at federal agencies that are critical for implementations of our environmental laws and management of public lands including the National Park Service, Bureau of Land Management, U.S. Fish and Wildlife Service, the U.S. Forest Service, and the Environmental Protection Agency.

58.60.   For example, due to the actions taken by DOGE and DOGETO, regional monitoring for northern spotted owls—a species listed as threatened under the Endangered Species Act that the Center has worked to protect—will likely not occur or be dramatically scaled back. In turn, this impairs the survival and recovery of the species, to the detriment of the Center and its members with recreational and other interests in the owl.

59.61.   Defendants DOGE and DOGETO are "agencies" within the meaning of FOIA and the APA.

60.62.   On information and belief, DOGE and DOGETO have failed to provide the public with the information required by Sections 552(a)(1)(A) and (g) of FOIA.

61.63.   In failing to inform the public how to obtain information from DOGE and DOGETO, Defendants are harming the Center and its members by impeding their ability to use FOIA and other means to obtain agency records and information to which they are legally entitled. This deprivation of information to which the Center and its members are statutorily entitled hampers the Center's ability to learn about and respond to the myriad steps that DOGE and DOGETO are taking that are likely resulting in ongoing harm to air and water quality; the climate; imperiled plants and wildlife; public lands; environmental justice and vulnerable communities.

62.64.  On information and belief, DOGE and DOGETO are taking no steps whatsoever to comply with their FOIA obligations.

63.65.  For example, they have not issued proposed or final regulations regarding fee waivers of expedited processing of FOIA requests. Nor, on information or belief, have they designated a FOIA Officer responsible for overseeing the agencies' compliance with their FOIA obligations.

64.66.  On information and belief, DOGE and DOGETO have no intention of complying with any of their obligations under FOIA. As explained by a member of this Court, this "appears to come from a desire to escape the obligations that accompany agencyhood," including "subjection to FOIA" and the APA, while "reaping only its benefits" in connection with other statutes that apply to agency status. *American Federation of Labor and Congress of Industrial Organizations v. Dep't of Labor*, Civ. No. 25-0339 (JDB) (D.D.C. Mem. Op, Feb. 14, 2025).

### ~~JANUARY 27~~MARCH 13, 2025 REQUESTS TO DOGE AND DOGETO

65.67.  On ~~January 27~~March 13, 2025 the Center submitted ~~three~~ four FOIA requests seeking records from ~~OMB,~~ the U.S. DOGE Service, and U.S. DOGE Service Temporary Organization. ~~Because the U.S. DOGE Service and U.S. DOGE Service Temporary Organization have failed to provide the public with any information regarding the appropriate method or means for submitting a FOIA request, the Center directed the requests to OMB.~~ One request submitted on ~~January 27~~March 13 sought, "from January 20, 2025 to the date ~~[] OMB~~DOGE conducts this search":

> 1. Any updated or new staff directory for the U.S. DOGE Service ~~Temporary Organization~~ and/or the U.S. DOGE Service Temporary Organization;
>
> 2. The calendar schedules, including but not limited to travel and/or meeting schedules, of all individuals whose status is either a volunteer

or paid federal employee within the U.S. DOGE ~~Service Temporary Organization~~ or the U.S. DOGE Service Temporary Organization who are now working within the U.S. DOGE Service since January 20, 2025;

3. All emails, direct messages, and messages via other messenger apps (e.g., Signal, WhatsApp, and Telegram) between any individual who is either a volunteer or paid federal employee within the U.S. DOGE Service Temporary Organization or a paid employee within the U.S. DOGE Service, and any entities outside of the federal government (emails ending with a suffix other than ".gov", including but not limited to @tesla.com, @spacex.com, @x.com, @neuralink.com, or @starlinkworld.com or any email representing an individual employed during the Presidential transition period from the entity known as the "Department of Government Efficiency");

4. All emails to or from [a list of 32 individuals and their related "@doge.eop.gov" emails];

5. All emails to or from erm71@who.eop.gov;

6. All emails to or from Katie Miller, katie.r.miller@who.eop.gov to the extent this individual now works in the U.S. DOGE Service Temporary Organization or the U.S. DOGE Service; and

5. All emails to or from White House Deputy Chief of Staff Stephen Miller ~~and any individual withing the DOGE Service Temporary Organization or the U.S. DOGE Service~~.

~~66.~~68.  An identical FOIA request was also submitted to DOGETO. ~~OMB acknowledged the Center's FOIA request by electronic mail on January 28, 2025, assigning it tracking number 2025-583.~~

~~67.~~69.  Pursuant to FOIA, ~~OMB was~~DOGE and DOGETO were required to make a determination on the Center's FOIA request by ~~February 25~~April 10, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

~~68.~~70.  On ~~January 27~~March 13, 2025 the Center submitted another FOIA request seeking "records from ~~the U.S.~~DOGE from January 20, 2025 to the date the search is conducted seeking ~~Service ("USDS") (formerly known as the U.S. Digital Service)"~~ specifically:

1. Any updated staff directory for ~~the USDS~~DOGE and DOGETO;

2. All planned or proposed staffing changes at any environmental agencies including but not limited to: Department of Interior and its sub-units; Department of Energy and its sub-units; U.S. Environmental Protection Agency; National Oceanic and Atmospheric Administration; and the U.S. Forest Service~~The calendar schedules, including but not limited to travel and/or meeting schedules, for all individuals who began working at USDS since January 20, 2025~~; and

3. All planned or proposed rescissions or modifications of environmental regulations, including those identified at any point in the process outlined in Executive Order 14219 (Feb. 19, 2025)~~4~~, implemented solely or jointly by environmental agencies including but not limited to: Department of Interior and its sub-units; Department of Energy and its sub-units; U.S. Environmental Protection Agency; National Oceanic and Atmospheric Administration; and the U.S. Forest Service.~~All emails, direct messages, and messages via other messenger apps (e.g., Signal, WhatsApp, and Telegram) between any individual working at USDS and any entities outside of the federal government (emails ending with a suffix other than ".gov," including but not limited to @tesla.com, @spacex.com, @x.com, @neuralink.com, or @starlinkworld.com, or any email representing an individual employed during the Presidential transition period from the entity known as the "Department of Government Efficiency");~~

~~4. All emails to or from Katie Miller to the extent this individual now works in the USDS; and~~

~~5. All emails to or from White House Deputy Chief of Staff Stephen Miller.~~

~~69.~~71.  An identical FOIA request was also submitted to DOGETO.~~OMB acknowledged the Center's FOIA request by electronic mail on January 28, 2025, assigning it tracking number 2025-582.~~

~~70.~~72.  Pursuant to FOIA, Defendants were required to make a determination on the Center's FOIA request by ~~February 25~~April 10, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

71.    On January 27, 2025 the Center submitted another FOIA request seeking "records

from the temporary organization named the 'U.S. DOGE Service Temporary Organization:'"

specifically:

> 1. Any updated or new staff directory for the U.S. DOGE Service
> Temporary Organization;
>
> 2. The calendar schedules, including but not limited to travel and/or
> meeting schedules, of all individuals whose status is either a volunteer or
> paid federal employee within the U.S. DOGE Service Temporary
> Organization since January 20, 2025;
>
> 3. All emails, direct messages, and messages via other messenger apps
> (e.g., Signal, WhatsApp, and Telegram) between any individual who is
> either a volunteer or paid federal employee within the U.S. DOGE Service
> Temporary Organization and any entities outside of the federal
> government (emails ending with a suffix other than ".gov", including but
> not limited to @tesla.com, @spacex.com, @x.com, @neuralink.com, or
> @starlinkworld.com or any email representing an individual employed
> during the Presidential transition period from the entity known as the
> "Department of Government Efficiency");
>
> 4. All emails to or from Katie Miller to the extent this individual now
> works in the U.S. DOGE Service Temporary Organization; and
>
> 5. All emails to or from White House Deputy Chief of Staff Stephen
> Miller.

72.    OMB acknowledged the Center's FOIA request by electronic mail on January 28,

2025, assigning it tracking number 2025-584.

73.    Pursuant to FOIA, Defendants were required to make a determination on the

Center's FOIA request by February 25, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

74.73.  Defendants' failure to make a timely determination and "promptly" provide all

responsive records to the Center undermines FOIA's primary purpose of transparency and

openness in government.

75.74.  Defendants hold and maintain the records at issue, which include staff lists, calendars, and specific communications the agencies sent to individuals, which are all relevant to the objectives of cutting federal regulations, staff, and budgets.

76.75.  The DOGE and DOGETO staff and calendars of DOGE and DOGETO as well as planned or proposed staffing and regulatory changes at environmental agencies and specific communications will shed valuable light on any directives and objectives of these agencies, which will shed light on the new administration's intended operations and responses.

77.76.  The Center has substantial, demonstrated interests in Defendants' development and oversight of federal regulations, policies, programs, staff, and budgets, particularly as these relate to air and water quality; climate change, imperiled plants and wildlife; public lands; environmental justice; and other issues at stake.

**CLAIMS FOR RELIEF**

**CLAIM ONE**

**Violations of the Freedom of Information Act in Connection with Defendants' Failures to Respond to the December 9, 2024 and ~~January 27~~March 13, 2025 FOIA Requests**

78.77.  The Center re-alleges and incorporates by reference all allegations made in this complaint.

79.78.  The Center has a statutory right of access to information and records requested under FOIA, and there is no lawful basis for Defendants' withholding of this information.

79.    Defendants' failure to disclose the requested information and records responsive to the Center's FOIA Requests violates FOIA, 5 U.S.C. § 552(a)(3), and injures Plaintiff in the manner described herein.

**CLAIM TWO**

**Violations of FOIA and the Administrative Procedure Act in Connection With DOGE's and DOGETO's Failures to Comply With FOIA's Affirmative Disclosure Obligations**

81.80.  The Center re-alleges and incorporates by reference all allegations made in this complaint.

82.81.  DOGE and DOGETO have violated, and are in ongoing violation of, FOIA's affirmative disclosure mandates. Despite FOIA's mandate that all agencies subject to FOIA must "publish in the Federal Register for the guidance of the public" the "methods whereby" the public "may obtain information, make submittals or requests, or obtain decisions," 5 U.S.C. § 552(a)(1)(A), Defendants DOGE and DOGETO have failed to provide this information and, on information and belief, they have no intention of doing so in the future.

83.82.  Despite FOIA's mandate that all agencies subject to FOIA must "make available for public inspection in an electronic format, reference material or a guide for requesting records or information from the agency" including the means for "obtaining various types and categories of public information from the agency" under FOIA, 5 U.S.C.*id.* at § 552(g), DOGE and DOGETO have failed to make this information available to the public and, on information and belief, they have no intention of doing so in the future.

84.83.  Accordingly, Defendants are in violation of FOIA's affirmative disclosure obligations and have therefore unlawfully withheld and unreasonably delayed their compliance with these obligations in violation of the APA, 5 U.S.C. § 706(1). These violations deprive the Center and its members of information to which they are entitled by law, impair their ability to make requests for specific information under FOIA, and otherwise harm their interests in the manner described herein.

**REQUEST FOR RELIEF**

The Center respectfully requests this Court to grant the following relief:

(A)    Enjoin Defendants from continuing to withhold, in response to Plaintiff's December 9, 2024 and ~~January 27~~March 13, 2025 FOIA requests, any non-exempt responsive records and/or segregable portions of otherwise lawfully exempt responsive records;

(B)    Order ~~OMB~~ Defendants to immediately make determinations on the Center's December 9, 2024, FOIA request and the Center's ~~January 27~~March 13, 2025 FOIA requests;

(C)    Retain jurisdiction of this action to ensure the timely processing of the Center's FOIA request and ensure no agency records are improperly withheld;

(D)    Declare that DOGE and DOGETO are in violation of FOIA and the APA by failing to comply with FOIA's mandate to inform the interested public as to methods and procedures for obtaining information from the agencies under FOIA;

(E)    Order DOGE and DOGETO to promptly comply with their obligations to inform the interested public as to methods and procedures for obtaining information from the agencies under FOIA;

(F)    Award the Center its attorneys' fees and litigation expenses;

(G)    Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted on ~~February 27~~April 21, 2025.

 s/ *Tanya Sanerib*
Tanya Sanerib (DDC Bar No. 473506)
(206) 379-7363
tsanerib@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 11374

Portland, OR 97211
(206) 379-7363
tsancrib@biologicaldiversity.org

Jason Rylander (DDC Bar No. 474995)
(202) 744-2244
jrylander@biologicaldiversity.org
Lauren Parker (DC Bar No. 1670885)
(202) 868-1008
lparker@biologicaldiversity.org
1411 K Street NW,
Washington DC 20005
(202) 744-2244
jrylander@biologicaldiversity.org

*Attorneys for Plaintiff*
*Center for Biological Diversity*