**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,

                *Plaintiff*,

    v.

OFFICE OF MANAGEMENT AND
BUDGET, *et al.*,

                *Defendants*.

Case No. 1:25-cv-00165-BAH

Judge Beryl A. Howell

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

I.      The Establishment of USDS and Its Limited Advisory Responsibilities ...........................2

II.     This Litigation...................................................................................................................7

LEGAL STANDARD.......................................................................................................................9

ARGUMENT .................................................................................................................................10

I.      The Court Should Dismiss the Second Amended Complaint Against the USDS
Entities Because Plaintiff Fails Plausibly to Allege that USDS Is an "Agency"
Subject to FOIA. ...........................................................................................................10

      A.    EOP Units That Lack Substantial Authority to Act Independent of the President,
Whose Sole Purpose Is Instead to Advise or Assist the President, Are Not
"Agencies" Under FOIA. ...................................................................................11

      B.    USDS's Charter Documents Do Not Demonstrate Intent to Delegate the
President's Own Authority to USDS. ..................................................................13

            1.   Operational Proximity. .......................................................................15

            2.   Lack of Self-Contained Structure.......................................................15

            3.   Nature of Delegated Authority. ..........................................................16

II.     Defendants Elon Musk and Amy Gleason Should Be Dismissed Because Only
Agencies—Not People—Are Subject to FOIA. .............................................................21

III.    Plaintiff Is Not Without Recourse...................................................................................22

CONCLUSION..............................................................................................................................22

CERTIFICATE OF SERVICE.......................................................................................................23

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) ........................................................................................ 9

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dep't of Labor*,
  --- F. Supp. 3d ----, 2025 WL 542825 (D.D.C. Feb. 14, 2025) ...................................... 20

*Armstrong v. EOP*,
  90 F.3d 553 (D.C. Cir. 1996) ..................................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 9, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 9

*Betz v. First Credit Servs., Inc.*,
  139 F. Supp. 3d 451 (D.D.C. 2015) ................................................................................. 1

*Bond v. United States*,
  572 U.S. 844 (2014) ...................................................................................................... 11

*Cause of Action Inst. v. OMB*,
  10 F.4th 849 (D.C. Cir. 2021) ........................................................................................ 10

*Citizens for Resp. & Ethics in Wash. v. Office of Admin.*,
  566 F.3d 219 (D.C. Cir. 2009) ................................................................................... *passim*

*Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*,
  --- F. Supp. 3d ----, 2025 WL 752367 (D.D.C. Mar. 10, 2025) ................................ 19, 20

*Competitive Enter. Inst. v. Podesta*,
  643 F. Supp. 3d 121 (D.D.C. 2022) ............................................................................ *passim*

*Cotton v. Heyman*,
  63 F.3d 1115 (D.C. Cir. 1995) .................................................................................. 13, 20

*Doshi v. Blinken*,
  2024 WL 3509486 (D.D.C. July 22, 2024) ..................................................................... 1

*Hemphill v. Dep't of Treasury*,
  2021 WL 5038655 (D.D.C. Oct. 29, 2021) ................................................................. 2, 9

*Isasi v. Office of the Att'y Gen.*,
  594 F. Supp. 2d 12 (D.D.C. 2009) ........................................................................... 21

*\*Kissinger v. Reps. Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) .................................................................................... 10, 12

*Legal Eagle, LLC v. Nat'l Sec. Council Records Access & Info. Sec. Mgmt. Directorate*,
  2021 WL 1061222 (D.D.C. Mar. 18, 2021) ............................................................... 10

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
  811 F.3d 542 (2d Cir. 2016) ............................................................................ 11, 13

*Marin Audubon Society v. FAA*,
  121 F.4th 902 (D.C. Cir. 2024) ............................................................................. 18

*Martinez v. Bureau of Prisons*,
  444 F.3d 620 (D.C. Cir. 2006) .............................................................................. 21

*\*Meyer v. Bush*,
  981 F.2d 1288 (D.C. Cir. 1993) ....................................................................... *passim*

*Pac. Legal Found. v. Council on Env't Quality*,
  636 F.2d 1259 (D.C. Cir. 1980) ............................................................................. 18

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
  758 F.3d 296 (D.C. Cir. 2014) .............................................................................. 13

*Rushforth v. Council of Econ. Advisers*,
  762 F.2d 1038 (D.C. Cir. 1985) ....................................................................... 13, 17

*Sanders v. Kerry*,
  180 F. Supp. 3d 35 (D.D.C. 2016) ......................................................................... 2, 9

*Sanders v. U.S. Dep't of Just.*,
  2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) ............................................................... 21

*Sierra Club v. Andrus*,
  581 F.2d 895 (D.C. Cir. 1978) .......................................................................... 18, 19

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*,
  264 F. Supp. 3d 262 (D.D.C. 2017) .......................................................................... 9

*\*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971) ..................................................................... 12, 13, 18

*U.S. Dep't of Just. v. Tax Analysts*,
   492 U.S. 136 (1989).................................................................................................. 10

*Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ........................................................................ 9

## STATUTES AND RULES

5 U.S.C. § 552 ............................................................................................... 9, 10, 11

5 U.S.C. § 3161 ........................................................................................................ 3

42 U.S.C. § 4342 .................................................................................................... 19

42 U.S.C. § 6612 .................................................................................................... 19

44 U.S.C. § 2201 .................................................................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 21

## OTHER AUTHORITIES

Exec. Order No. 14,158, 90 Fed. Reg. 8441 ................................................... *passim*

Exec. Order No. 14,170, 90 Fed. Reg. 8621 .................................................. 4, 16, 17

Exec. Order No. 14,210, 90 Fed. Reg. 9669 ................................................... 4, 5, 17

Exec. Order No. 14,218, 90 Fed. Reg. 10581 ..................................................... 5, 16

Exec. Order No. 14,219, 90 Fed. Reg. 10583 ......................................................... 5, 6

Exec. Order No. 14,222, 90 Fed. Reg. 11095 ......................................................... 6, 17

S. Rep. No. 93-1200 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 6285...................... 12

H.R. Rep. No. 93-1380 (1974) (Conf. Rep.).......................................................... 12

## INTRODUCTION

Plaintiff Center for Biological Diversity seeks disclosure of records in response to Freedom of Information Act ("FOIA") requests it submitted to the United States DOGE Service ("USDS") and the Office of Management and Budget ("OMB"). USDS and affiliated Defendants move to dismiss Plaintiff's Second Amended Complaint against them because USDS, Elon Musk, and Amy Gleason are not "agencies" for purposes of FOIA. Defendants do not, through this Motion, seek to dismiss the operative claims against OMB.[1]

Defendant USDS is a component of the Executive Office of the President ("EOP") whose sole function is to advise and assist the President. It is a non-statutory entity that has no statutory authorities. Instead, USDS has only the limited responsibilities set forth in a January 20, 2025, Executive Order reconstituting the former United States Digital Service as a freestanding component within EOP, as well as a series of additional Executive Orders and a presidential memorandum issued subsequently. These documents underscore that USDS's responsibilities are purely advisory, to help advise the President and consult with and collect information from certain governmental components on specifically identified topics. Although the Executive Orders also provide for Department of Government Efficiency ("DOGE") teams, those Agency DOGE Teams are comprised of agency employees, located entirely within federal agencies, answer to agency leadership (not to USDS), and implement the President's DOGE agenda alongside (and subject to oversight and approval from) agency leadership. As agency employees and detailees, the Agency DOGE Teams may create federal records subject to FOIA, and their agencies would process those records upon request. But with respect to USDS, neither Congress

---

[1] The remaining claims in this case are staying pending resolution of the instant Motion. *E.g.*, *Betz v. First Credit Servs., Inc.*, 139 F. Supp. 3d 451, 456 n.4 (D.D.C. 2015); *see also Doshi v. Blinken*, 2024 WL 3509486, at *9–10 (D.D.C. July 22, 2024) (citing cases).

(which had no role in creating this non-statutory entity) nor the President has delegated to it any federal program responsibilities.

The absence of substantial independent authority is sufficient as a matter of law to resolve USDS's FOIA status. But other features of USDS—which the D.C. Circuit has recognized as potentially important in assessing whether a component qualifies as an agency— confirm that USDS is not an agency. In particular, USDS is operationally close to the President (reporting directly to the White House Chief of Staff), and the handful of responsibilities it has been assigned are limited and purely advisory.

Because Plaintiff fails plausibly to allege that USDS is an "agency" subject to FOIA— and because it is self-evident that Elon Musk and Amy Gleason also are not "agencies"—the Second Amended Complaint should be dismissed as against the four USDS Defendants.

## **BACKGROUND**

### I.    **The Establishment of USDS and Its Limited Advisory Responsibilities**

Shortly after President Trump took office on January 20, 2025, he signed a series of Executive Orders and a presidential memorandum concerning USDS. Because the Executive Orders and memorandum are dispositive of USDS's FOIA status, we discuss a representative sampling of them individually here.[2]

***Executive Order 14,158***: On January 20, 2025, President Trump signed Executive Order 14,158, which redesignated the previously established United States Digital Service as the U.S.

---

[2] The Court may consider these materials on Defendants' 12(b)(6) Motion because the documents are: (i) referenced in the Second Amended Complaint and central to Plaintiff's claims; and/or (ii) "public documents of which a court may take judicial notice." *Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016) (cleaned up); *see Hemphill v. Dep't of Treasury*, 2021 WL 5038655, at *3 (D.D.C. Oct. 29, 2021), *aff'd*, 2022 WL 1701529 (D.C. Cir. May 25, 2022) (per curiam).

DOGE Service (USDS) and charges it with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems."  90 Fed. Reg. 8441 (Jan. 20, 2025), §§ 3(a), 4 ("EO" or "Order"); *see* Second Am. Compl. (ECF 20) ¶¶ 18, 50, 54.  The USDS sits within the Executive Office of the President.  *See* EO 14,158, § 3(a).  The Order further establishes a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026.  *Id.* § 3(b); *see* Second Am. Compl. ¶ 19.  "The U.S. DOGE Service Temporary Organization shall be headed by the USDS Administrator and shall be dedicated to advancing the President's 18-month DOGE agenda."  EO 14,158, § 3(b).

Executive Order 14,158 expressly distinguishes between USDS and other EOP components, on the one hand, and "Agencies" on the other.  The term "Agency" in the EO explicitly excludes "the Executive Office of the President or any components thereof," including USDS.  *Id.* §§ 2(a), 3(a).  However, "[i]n consultation with USDS, each Agency Head shall establish *within* their respective Agencies a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days" of the Order to "implement[]" the President's agenda.  *Id.* §§ 1, 3(c) (emphasis added).  The Order directs Agency Heads to select the DOGE Team members "in consultation with the USDS Administrator" and to "ensure that DOGE Team Leads coordinate their work with USDS and *advise their respective Agency Heads* on implementing the President's DOGE Agenda."  *Id.* § 3(c) (emphasis added).

Section 4 of the Order tasks the USDS Administrator with "commenc[ing] a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems."  *Id.* § 4(a).  The Order directs

Agency Heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems," while also directing that "USDS shall adhere to rigorous data protection standards." *Id.* § 4(b). In other words, agency DOGE Teams composed of agency personnel who are selected by agency leadership and report up agency supervisory chains "take all necessary steps" within their agencies and "coordinat[e]" with USDS on the President's "DOGE Agenda." *Id.* §§ 1, 3(c), 4(b).

*Executive Order 14,170:* Also on January 20, President Trump signed Executive Order 14,170, *Reforming the Federal Hiring Process and Restoring Merit to Government Service*, 90 Fed. Reg. 8621 (Jan. 20, 2025). That Executive Order directs the Assistant to the President for Domestic Policy, "in consultation with the Director of [OMB], the Director of the Office of Personnel Management, and the Administrator of" USDS to "develop and send to agency heads a Federal Hiring Plan that brings to the Federal workforce only highly skilled Americans dedicated to the furtherance of American ideals, values, and interests." *Id.* § 2(a). The Order further states that the resulting federal hiring plan "shall provide specific best practices for the human resources function in each agency, which each agency head shall implement, *with advice and recommendations* as appropriate from" USDS. *Id.* § 2(d) (emphasis added).

*Executive Order 14,210*: On February 11, 2025, the President issued Executive Order 14,210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025); *see* Second Am. Compl. ¶¶ 18, 52. EO 14,210 directs OMB to submit a plan to reduce the size of the Federal Government's workforce, EO 14,210, § 3(a), and directs *Agency Heads* to, among other things, "promptly undertake preparations to initiate large-scale reductions in force," *id.* § 3(c).

4

EO 14,210 further tasks each "DOGE Team Lead"—defined as "the leader of the Department of Government Efficiency (DOGE) Team *at each agency*, as defined in Executive Order 14158," *id.* § 2(c) (emphasis added)—with several limited responsibilities.  First, the DOGE Team Lead consults with each Agency Head on establishing a hiring plan.  *See id.* § 3(b) ("Each Agency Head shall develop a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas.").  Second, under the hiring plan, "new career appointment hiring decisions shall be made in consultation with the agency's DOGE Team Lead, consistent with applicable law."  *Id.* § 3(b)(i).  Third, "[t]he agency shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled."  *Id.* § 3(b)(ii).  And fourth, "[e]ach DOGE Team Lead shall provide the" USDS Administrator "with a monthly hiring report for the agency."  *Id.* § 3(b)(iii).

***Executive Order 14,218***:  On February 19, 2025, President Trump issued Executive Order 14,218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025).  EO 14,218 directs the Director of OMB and the Administrator of USDS, in coordination with the Assistant to the President for Domestic Policy, to "identify all other sources of Federal funding for illegal aliens[,]" and to "*recommend* additional agency actions to align Federal spending with the purposes of this order, and, where relevant, enhance eligibility verification systems."  *Id*. § 2(b)(i)–(ii) (emphasis added).

***Executive Order 14,219***:  Also on February 19, President Trump issued Executive Order 14,219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, 90 Fed. Reg. 10583 (Feb. 19, 2025); *see* Second Am. Compl. ¶¶ 18, 53.  That Executive Order directs that "Agency heads shall, in

coordination with their DOGE Team Leads and the Director of [OMB], initiate a process to review all regulations subject to their sole or joint jurisdiction for consistency with law and Administration policy" and lists certain classes of regulations that Agency Heads must identify. EO 14,219, § 2. "Additionally, agency heads shall consult with their DOGE Team Leads and the Administrator of [the Office of Information and Regulatory Affairs] on potential new regulations as soon as practicable." *Id.* § 4. EO 14,219 does not mention USDS or assign any duties to it.

***Executive Order 14,222***: Executive Order 14,222, *Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, 90 Fed. Reg. 11095 (Feb. 26, 2025), states that "[e]ach Agency Head shall, with assistance as requested from the agency's DOGE Team Lead," among other steps "build a centralized technological system within the agency to seamlessly record every payment issued by the agency." *Id.* § 3(a); *see also id.* §§ 3(a)(i), (3)(b), 3(c), 3(d)(i) (identifying additional steps to be taken by agency heads in consultation with the agency's DOGE Team Lead). The Executive Order also directs each DOGE Team Lead to provide the Administrator with "a monthly informational report on contracting activities[,]" *id.* § 3(d)(ii), and "to the extent consistent with law, provide the Administrator with a monthly informational report listing each agency's justifications for non-essential travel[,]" *id.* § 3(e).

***Hiring Freeze Presidential Memorandum***: In addition to these Executive Orders, a January 20, 2025, presidential memorandum directs the OMB Director, "in consultation with" the Office of Personnel Management ("OPM") Director and USDS Administrator, to "submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition." *Hiring Freeze*, The White House (Jan. 20, 2025), *available at* https://www.whitehouse.gov/presidentialactions/2025/01/hiring-freeze/. The memorandum

further states that the hiring freeze directed by the memorandum remains in place for the Internal Revenue Service ("IRS") "until the Secretary of the Treasury, in consultation with the Director of OMB and the Administrator of USDS, determines that it is in the national interest to lift the freeze." *Id.*

## II.    This Litigation

Relevant to this Motion, Plaintiff purports to sue: (1) U.S. DOGE Service (U.S. Digital Service); (2) U.S. DOGE Service Temporary Organization ("USDSTO"); (3) Elon Musk, "in his official capacity as Agency Head of the U.S. DOGE Service and U.S. DOGE Temporary Organization"; and (4) Amy Gleason, "in her official capacity as Acting Administrator of the U.S. DOGE Service and U.S. DOGE Temporary Organization" (collectively, "USDS Defendants"). *See* Second Am. Compl. ¶¶ 18–21. Its case concerns five FOIA requests: one to OMB and four to USDS. *Id.* ¶¶ 37, 67–68, 70–71. Because this Motion does not seek to dismiss OMB, and the content of the USDS FOIA Requests is not directly relevant to this Motion, we discuss these topics more briefly here.

*OMB Request.* On December 9, 2024, Plaintiff sent a FOIA request to OMB that sought three broad categories of presidential transition materials, as part of the transition process from the former Biden administration to the Trump transition office:

(1)    transition materials sent to or received by Elon Musk; any Tesla, SpaceX, X, or "any affiliated business entity"; or requested by a representative of the Trump transition office, "mentioning, discussing, or documenting" Schedule F, "[t]he civil service," and other related topics;

(2)    transition materials sent to or received by any person "associated with" "DOGE" or who otherwise "purports to represent Elon Musk or Vivek Ramaswamy" "in

relation to" "DOGE" about issues under OMB's purview (among other things); and

(3)    any additional transition materials sent to or received by OMB referencing "DOGE," Elon Musk, or Vivek Ramaswamy.

Second Am. Compl. ¶¶ 4, 37.  OMB acknowledged Plaintiff's FOIA request by electronic mail on December 10, 2024, assigning it tracking number 2025-350.  *Id.* ¶ 38.  On January 14, 2025, OMB indicated that it had initiated a search and that the Plaintiff's FOIA request had been added to its FOIA queue.  *Id.* ¶ 41.

*USDS Requests.*  On March 13, 2025, Plaintiff sent four FOIA requests to the USDS entities (*i.e.*, the U.S. DOGE Service and U.S. DOGE Service Temporary Organization).  Second Am. Compl. ¶¶ 5, 67–68, 70–71.[3]  The requests contained ten broad categories of documents, ranging from (1) calendar schedules of "all individuals" volunteering with or working for USDS since January 20, 2025, to (2) "[a]ll emails" and "direct messages" between any individual volunteering with or working for USDS and any entities outside of the federal government, to (3) all emails to or from the White House Deputy Chief of Staff Stephen Miller.  *Id.* ¶¶ 67, 70.

Plaintiff's Second Amended Complaint, filed on April 23, 2025, against OMB and the USDS Defendants, contains two counts.  First, Plaintiff claims that Defendants violated FOIA by

---

[3] Plaintiff initially filed suit on January 20, 2025, against only OMB and limited to Plaintiff's December 9, 2024, FOIA request.  *See* ECF 1.  Plaintiff filed an Amended Complaint on February 27, 2025, to which Plaintiff added the USDS Defendants.  ECF 9 ("Am. Compl.").  The Amended Complaint referenced four January 27, 2025, FOIA requests that had been directed to OMB but that sought internal USDS materials, premised on Plaintiff's allegation that USDS was a "subcomponent" of OMB.  *Id.* ¶¶ 65, 68 (FOIA Requests); *see id.* ¶¶ 12, 14, 18–19 (alleging USDS subcomponent of OMB).  Following Defendants' review of the Amended Complaint, the Parties agreed that, in the interests of judicial efficiency, Plaintiff would exhaust administrative remedies by sending the January 27 FOIA requests directly to USDS rather than to OMB— which it did, on March 13.  ECF 17 ¶¶ 4, 5; Second Am. Compl. ¶ 5.

failing to respond to Plaintiff's December 9, 2024, and March 13, 2025, FOIA requests.  Second Am. Compl. ¶¶ 77–79.  Second, Plaintiff claims that the USDS Defendants have violated FOIA's affirmative disclosure mandates, which require agencies subject to FOIA to publish the "'methods whereby'" the public "'may obtain information, make submittals or requests, or obtain decisions,'" and have therefore "unlawfully withheld and unreasonably delayed their compliance with these obligations in violation of the APA."  *Id.* ¶¶ 80–83 (quoting 5 U.S.C. § 552(a)(1)(A)).  Plaintiff seeks declaratory and injunctive relief.  *Id.* ¶ 7; *id.* at 22.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" and rise above speculation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); *accord Hemphill*, 2021 WL 5038655, at *3.  A court may also consider judicially noticeable documents or facts without converting the motion to dismiss into a motion for summary judgment.  *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 264 (D.D.C. 2017); *Sanders*, 180 F. Supp. 3d at 41; *see also Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the

court may consider the facts alleged in the complaint, documents attached thereto or incorporated

therein, and matters of which it may take judicial notice." (citation omitted)).

## ARGUMENT

**I.    The Court Should Dismiss the Second Amended Complaint Against the USDS Entities Because Plaintiff Fails Plausibly to Allege that USDS Is an "Agency" Subject to FOIA.**

FOIA's record disclosure requirements apply only to federal "agencies." *Legal Eagle,*

*LLC v. Nat'l Sec. Council Records Access & Info. Sec. Mgmt. Directorate*, 2021 WL 1061222, at

*3 (D.D.C. Mar. 18, 2021), *aff'd*, 2025 WL 350040 (D.C. Cir. Jan. 30, 2025) (per curiam), *reh'g*

*en banc denied*, 2025 WL 1238618 (Apr. 28, 2025) (per curiam); *Competitive Enter. Inst. v.*

*Podesta*, 643 F. Supp. 3d 121, 126 (D.D.C. 2022).  Specifically, FOIA requires that "[e]ach

agency" make available to the public non-exempt agency records, 5 U.S.C. § 552, and "confers

jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to

order the production of any agency records improperly withheld.'"  *U.S. Dep't of Just. v. Tax*

*Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)); *see also Kissinger v.*

*Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("federal jurisdiction [under

FOIA] is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3)

'agency records'" (quoting 5 U.S.C. § 552(a)(4)(B)).[4]

Whether an entity is an "agency" subject to FOIA is properly resolved on a motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Legal*

*Eagle*, 2021 WL 1061222, at *3–4; *see also Cause of Action Inst. v. OMB*, 10 F.4th 849, 854

(D.C. Cir. 2021).  "Where, as here, the defendant is a unit within the Executive Office of the

---

[4] Presidential records are subject to the Presidential Records Act ("PRA").  *See* 44 U.S.C. § 2201 *et seq.*  The PRA specifies that its coverage and the coverage of FOIA are mutually exclusive. *See* 44 U.S.C. § 2201(2)(B).

President," a plaintiff's "conclusory pleading of agency status [i]s insufficient." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016); *see Iqbal*, 556 U.S. at 681 ("conclusory" allegations and "bare assertions" "not entitled to be assumed true"). Instead, "[t]o state a claim for relief under 5 U.S.C. § 552(a)(4)(B), a plaintiff must plausibly allege, among other things, that the defendant is an agency subject to the FOIA." *Main St. Legal Servs.*, 811 F.3d at 567. Plaintiff fails to meet that burden here.

      A.    <u>EOP Units That Lack Substantial Authority to Act Independent of the President, Whose Sole Purpose Is Instead to Advise or Assist the President, Are Not "Agencies" Under FOIA</u>.

As amended in 1974, FOIA defines the term "agency" to include:

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f). Although the text references the "Executive Office of the President," the term "agency" does not include every component in that office, but only components that fall within the specified list items ("department," "corporation," or "other establishment"). An EOP component that does not qualify as a department, corporation, or establishment is not subject to FOIA. That understanding is consistent with the term being defined ("agency"), which does not naturally refer to entities that lack formal structure or independent authority, like the White House Office, the National Security Council, or the Office of Administration. *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 861 (2014) (noting that it is reasonable to consider the ordinary meaning of a defined term in interpreting the scope of a statutorily provided definition).

Accordingly, the Conference Committee Report accompanying the 1974 amendments to FOIA, which added the reference to the "Executive Office of the President," explains that the term "Executive Office of the President" is "not to be interpreted as including the President's

immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."  S. Rep. No. 93-1200, at 15 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6293; H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.) (same).  Citing this "unambiguous" legislative history, the Supreme Court held in *Kissinger v. Reporters Committee for Freedom of the Press* that the "'Executive Office' does not include the Office of the President," and that "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA."  445 U.S. at 156 (quoting H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.)); *see also Meyer v. Bush*, 981 F.2d 1288, 1293 n.3 (D.C. Cir. 1993) (FOIA excludes "at least those approximately 400 individuals employed in the White House Office" who are the President's immediate personal staff).

The legislative history also makes clear that Congress intended to codify the D.C. Circuit's decision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971).  *See* 1974 U.S.C.C.A.N. at 6293 (stating that "[w]ith respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067"); *Armstrong v. EOP*, 90 F.3d 553, 558 (D.C. Cir. 1996) ("That the Congress intended to codify *Soucie* is clear enough."); *accord Meyer*, 981 F.2d at 1291.  *Soucie* considered whether the Office of Science and Technology ("OST"), an EOP component now known as the Office of Science and Technology Policy ("OSTP"), was an "agency" subject to FOIA.  The D.C. Circuit held that it was, because, beyond its duties of advising the President, OSTP also had the "independent function of evaluating federal [scientific] programs."  448 F.2d at 1075.  When OSTP inherited that function from one of its predecessor organizations, the court noted, both Congress and the President contemplated that Congress would "retain control over information on federal

12

programs accumulated by the OST, despite any confidential relation between the Director of the OST and the President." *Id.* OSTP was found to be a FOIA agency because it did not have the "sole function" of advising and assisting the President and instead had "substantial independent authority in the exercise of specific functions." *Id.* at 1073. Namely, OSTP had "independent authority to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Office of Admin.*, 566 F.3d 219, 223 (D.C. Cir. 2009); *see also Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1041 (D.C. Cir. 1985) ("OST could take direct action and thus was deemed to be an administrative agency"); *Meyer*, 981 F.2d at 1292 ("OST was a FOIA agency precisely because it could act directly and independently beyond advising and assisting the President.").

> B.    USDS's Charter Documents Do Not Demonstrate Intent to Delegate the President's Own Authority to USDS.

Plaintiff's conclusory allegations regarding USDS's status (Second Am. Compl. ¶¶ 18, 19, 61), cannot state a claim. *Main St. Legal Servs.*, 811 F.3d at 567; *see also, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (courts "do not accept as true . . . the plaintiff's legal conclusions"). Instead, the Court should evaluate whether USDS "lacks substantial independent authority and is therefore not an agency under FOIA." *CREW v. Office of Admin.*, 566 F.3d at 224. Courts answer that question by discerning an entity's (here, USDS's) legal authority under the governing statutes, regulations, or executive orders and thereby identifying the functions that the USDS "[i]s authorized" to perform. *Cotton* v. *Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995); *see id.* at 1122 (the "important consideration regarding agency status" is "whether the relevant entity had 'any authority in law to make decisions'" (citation omitted)).

In certain contexts, the D.C. Circuit has applied a three-factor test to determine whether an entity wields "substantial independent authority." The three factors are: (1) "how close operationally [the entity] is to the President," (2) "whether it has a self-contained structure," and (3) "the nature of its delegat[ed] authority." *CREW v. Office of Admin.*, 566 F.3d at 222 (cleaned up). The test was first articulated in *Meyer*, where the D.C. Circuit held that a group of senior advisers to the President working within the EOP as the Task Force on Regulatory Relief did not constitute an "agency" under FOIA, even though the group "evaluated agency regulatory efforts and had authority to provide some direction over agency rulemaking." 981 F.2d at 1292. The D.C. Circuit later applied the test to hold that the National Security Council, which is headed by the President and is authorized to provide guidance and policy direction for national security issues, is not an "agency" subject to FOIA. *Armstrong*, 90 F.3d at 567; *id.* at 558 ("These three factors are not necessarily to be weighed equally; rather, each factor warrants consideration insofar as it is illuminating in the particular case.").

To be clear, the Court is not *required* to apply the three-factor test in resolving USDS's agency status. This is because "common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President." *CREW v. Office of Admin.*, 566 F.3d at 222 (quotations omitted) (court did not analyze *Meyer* factors); *see also Competitive Enter.*, 643 F. Supp. 3d at 127 (the "lodestar" of the Court's analysis remains whether the entity in question exercises "'substantial independent authority.'" (quoting *Armstrong*, 90 F.3d at 557–58)).[5] In any case,

---

[5] Further, the D.C. Circuit has suggested the test need be applied only where the entity in question supervises other components of the Executive Branch. *See Armstrong*, 90 F.3d at 558 (test is "relevant to determining whether those who both advise the President *and supervise others in the Executive Branch* exercise 'substantial independent authority' and hence should be

whether considered individually or "conglomerated," *Competitive Enter.*, 643 F. Supp. 3d at 127

n.2, the three factors underscore that USDS lacks substantial independent authority and is thus

not an "agency" subject to FOIA.

### 1. *Operational Proximity.*

The January 20, 2025, Executive Order establishing USDS makes clear that USDS is

operationally close to the President.  EO 14,158 reorganized and renamed the United States

Digital Service "as the United States DOGE Service (USDS)," and established it "in the

Executive Office of the President."  EO 14,158, § 3(a).  The Order further establishes "a USDS

Administrator in the Executive Office of the President who shall report to the White House Chief

of Staff."  *Id.* § 3(b).  The Order explicitly distinguishes USDS and the USDS Administrator, on

the one hand, from "Agencies" (which are defined not to include the EOP or components

thereof) and "DOGE Teams" within the respective Agencies, on the other.  *Id.* §§ 2(a), 3(c).

### 2. *Lack of Self-Contained Structure.*

Although least important of the three factors, the second factor also favors the conclusion

that USDS is not an "agency," because it is a non-statutory entity that would not be in a position

to exercise independent authority if so delegated.  *See Armstrong*, 90 F.3d at 558–560 ("[W]hile

a definite structure may be a prerequisite to qualify as an establishment within the executive

branch . . . not every establishment is an agency under the FOIA."; even when an office "has a

structure sufficiently self-contained that the entity *could* exercise substantial independent

authority . . . [t]he remaining question is whether the [entity] does *in fact* exercise such

authority." (cleaned up and citations omitted)); *see also Meyer*, 981 F.2d at 1296 ("FOIA, by

---

deemed an agency subject to the FOIA" (emphasis added)); *Meyer*, 981 F.2d at 1293 (stating that
"when we apply *Soucie* to those who help the President *supervise others in the executive branch*,
we think it is necessary to focus on three interrelated factors" (emphasis added)).  USDS lacks
such supervisory authority.

declaring that only 'establishments in the executive branch' are covered, 5 U.S.C. § 552(e), requires a definite structure for agency status.").

### 3. *Nature of Delegated Authority.*

Concerning the third factor (nature of the delegation), as the Executive Orders and presidential memorandum collectively demonstrate, USDS has a limited set of advisory responsibilities, none of which even arguably involves the authority to direct agencies or other components of the executive branch. Specifically, according to its charter documents, USDS has the following tasks and responsibilities, *inter alia*:

- The USDS Administrator is to commence a software modernization initiative and "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." EO 14,158, § 4(a).

- The USDS Administrator should, "to the maximum extent consistent with law," have "full and prompt access to all unclassified agency records, software systems, and IT systems." *Id*. § 4(b).

- USDS may provide "advice and recommendations as appropriate" concerning implementation of the federal hiring plan developed by the Assistant to the President for Domestic Policy. EO 14,170, § 2(d).

- The Administrator of USDS, with the OMB Director and in coordination with the Assistant to the President for Domestic Policy, is directed to identify sources of federal funding for illegal aliens and make various recommendations. EO 14,218, § 2(b)(i)–(ii).

In addition, according to the charter documents, agencies and other entities are directed to "coordinate" or "consult" with USDS as follows, *inter alia*:

- Agency Heads are directed to establish an Agency DOGE Team within their respective Agencies "in consultation with USDS," and to select DOGE Team members "in consultation with the USDS Administrator." EO 14,158, § 3(c).

- Agency DOGE Teams—which are employees of the respective agencies—are tasked generally with "coordinat[ing] their work with USDS," while "advis[ing]" their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* § 3(c).

- USDS receives from each Agency DOGE Team Lead "a monthly informational report on contracting activities," EO 14,222, § 3(d)(ii), as well as "to the extent consistent with law," "a monthly informational report listing each agency's justifications for non-essential travel," *id*. § 3(e).

- The Assistant to the President for Domestic Policy is directed to develop a federal hiring plan "in consultation with" the USDS Administrator (as well as the Directors of OMB and OPM).  EO 14,170, § 2(a).

- USDS receives monthly hiring reports from each DOGE Team Lead.  EO 14,210, § 3(b)(iii).

- The OMB Director is also directed to "consult[]" with the USDS Administrator (as well as the OPM Director) to submit a plan to reduce the size of the federal workforce.  *See Hiring Freeze*, The White House (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/.

- The Secretary of the Treasury is also directed to "consult[]" with the USDS Administrator (as well as the OMB Director) in determining whether it is in the national interest to lift the current IRS hiring freeze.  *Id*.

None of the limited responsibilities assigned to USDS—which are purely advisory and consultative in nature—can plausibly be characterized as "authority" delegated to USDS, let alone authority that is independent of the President.  *Accord, e.g.*, *CREW v. Office of Admin.*, 566 F.3d at 224 (Office of Administration not an agency under FOIA because "everything the Office of Administration does is directly related to the operational and administrative support of the work of the President and his EOP staff"); *Armstrong*, 90 F.3d at 553 (National Security Council ("NSC") not a FOIA agency because neither the President nor Congress has delegated any function to the NSC other than that of advising and assisting the President); *Rushforth*, 762 F.2d at 1043 (Council of Economic Advisers ("CEA") not a FOIA agency because, although CEA has duties prescribed by statute (unlike USDS), each of its enumerated statutory duties is directed at providing advice and assistance to the President, and neither the governing statute nor any executive order gives CEA any regulatory power).

17

USDS's status as a non-agency is even more clear when one contrasts the EOP components that the D.C. Circuit *has* held to be FOIA agencies. In *Soucie*, as discussed, the D.C. Circuit held that OSTP was a FOIA agency because it had independent authority "to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *CREW v. Office of Admin.*, 566 F.3d at 223 (discussing *Soucie*, 448 F.2d at 1073–75). OMB is a FOIA agency because of its statutory duty to provide budget information to Congress, along with "numerous other statutory duties." *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979); *see also id.* at 902 n.25 (noting OMB's authority to "assemble, correlate, revise, reduce, or increase the requests for appropriations of the several departments or establishments"). And the Council on Environmental Quality ("CEQ") has been deemed a FOIA agency based on the determination that it had independent authority to coordinate federal environmental regulatory programs, issue guidelines for preparing environmental impact statements, and promulgate regulations—legally binding on the agencies[6]—for implementing procedural provisions of the National Environmental Policy Act. *See Pac. Legal Found. v. Council on Env't Quality*, 636 F.2d 1259, 1262–63 (D.C. Cir. 1980).

USDS is nothing like the EOP components found to have agency status. Unlike OMB's significant statutory responsibilities, USDS has no statutory responsibilities (and indeed, no specific statutory recognition). And unlike the heads of OMB, CEQ, and OSTP, the USDS Administrator is not a position that requires Senate confirmation; indeed, it is not even a

---

[6] *But see Marin Audubon Society v. FAA*, 121 F.4th 902, 908 (D.C. Cir. 2024) (holding that the "CEQ regulations, which purport to govern how all federal agencies must comply with the National Environmental Policy Act, are *ultra vires*"), *reh'g en banc denied*, 2025 WL 374897 (D.C. Cir. Jan. 31, 2025) (per curiam); *mandate stayed by* 129 F.4th 869 (Feb. 28, 2025). We do not address the merits of that decision here.

18

statutorily created position.  *Compare Sierra Club*, 581 F.2d at 902 (noting that "Congress signified the importance of OMB's power and function, over and above its role as presidential advisor, when it provided, also by amendment in 1974, for Senate confirmation of the Director and Deputy Director of the OMB"); *see also* 42 U.S.C. § 4342 (Senate confirmation of the head of CEQ); 42 U.S.C. § 6612 (same for head of OSTP).  USDS has no power (unlike CEQ) to issue regulations, let alone regulations that apply throughout the executive branch.  Nor does USDS have powers analogous to those OSTP has over research projects, scholarships, and scientific research programs.

Defendants recognize that another Judge in this District found that USDS "likely" had agency status under FOIA—at least, as the Court emphasized, "on th[e] preliminary record" before it when issuing a preservation order pending litigation.  *CREW v. U.S. DOGE Serv.*, --- F. Supp. 3d ----, 2025 WL 752367, at *10 (D.D.C. Mar. 10, 2025) (Cooper, J.) ("*CREW FOIA* case"), *reconsideration denied*, 2025 WL 863947 (Mar. 19, 2025).  That decision, by its own admission, relied heavily on hearsay media reports that referred to "DOGE" generally, not USDS, in particular.  *Id.* at *12.  The decision also placed substantial weight on the phrasing of EO 14,158 when describing the purpose of "the President's 'Department of Government Efficiency'" as to "implement the President's DOGE agenda."  *Id.* at *11.  But that verbiage appears in prefatory language in the EO, and the "Department of Government Efficiency" includes both USDS *and* agency DOGE Teams, the latter of which are comprised of agency personnel reporting up agency chains and responsible for implementing the President's DOGE agenda within their respective agencies.  And in any event, the abstract notion of "implement[ing]" a policy "agenda" does not equate to wielding substantial independent authority, particularly where the more specific responsibilities *actually* attributed to USDS are all

advisory and consultative in nature. *See Cotton*, 63 F.3d at 1121, 1122.

In addition, EO 14,158 makes clear that its stated purpose is to be carried out by the totality of the "DOGE Structure," which includes not only USDS and USDSTO, but also the DOGE Teams that are in agencies and comprised of agency personnel. EO 14158, § 3(a)–(c). To the extent any part of the "DOGE Structure" plays an implementation role, the EOs indicate that it is the *agency DOGE Teams*, advising and consulting with agency heads regarding implementation actions within agencies, as discussed above. The opinion in the *CREW FOIA* case failed to appreciate this distinction. *E.g.*, 2025 WL 752367, at *11 (describing EO that "grants the USDS Team Lead the power to keep vacant career positions open unless an agency overrides their decision"); *id.* at *12 (including "DOGE teams" as part of USDS's "defined staff" rather than part of an agency's staff). Any authorities or activities of DOGE Teams are irrelevant to the question of whether USDS itself is an "agency." The fact that DOGE Teams are already part of the agencies where they are embedded means that their records are already governed by the agencies' FRA requirements and are subject to FOIA to the same extent any other records within those agencies might be. In sum, this Court should not follow the *CREW FOIA* decision.[7]

---

[7] Plaintiff cites a preliminary ruling of another Judge in this District on a motion for temporary restraining order to restrain the Department of Labor, the Department of Health and Human Services, the Consumer Financial Protection Bureau, and the USDS entities from providing any person outside the three agencies—namely, DOGE personnel—with access to records systems containing personal information or data. Second Am. Compl. ¶ 66 (citing *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dep't of Labor*, --- F. Supp. 3d ----, 2025 WL 542825, at *1, *2–4 (D.D.C. Feb. 14, 2025) (Bates, J.) (concluding that "[P]laintiffs have *not* shown a substantial likelihood that USDS is *not* an agency" for purposes of the Economy Act of 1932 and therefore not permitted consistent with the Privacy Act to access agency's record systems (emphases added))). But that court, which addressed the issue in an expedited posture, in a different substantive context, misinterpreted the Order establishing USDS similar to the Court in the *CREW FOIA* case. 2025 WL 542825, at *3.

Because Plaintiff has not met its burden to plausibly allege that USDS is an agency, the Court should dismiss Plaintiff's Second Amended Complaint against the USDS Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Defendants Elon Musk and Amy Gleason Should Be Dismissed Because Only Agencies—Not People—Are Subject to FOIA.

Defendants Elon Musk and Amy Gleason should also be dismissed from this case because people are not subject to FOIA—only "agencies" are. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under . . . FOIA."; FOIA "concern[s] the obligations of agencies as distinct from individual employees in those agencies"); *Competitive Enter.*, 643 F. Supp. 3d at 126 ("Needless to say, individuals are not agencies."); *see also Sanders v. U.S. Dep't of Just.*, 2011 WL 1769099, at *1 (D.C. Cir. Apr. 21, 2011) (per curiam) (claims against individual defendants are not cognizable under FOIA); *Isasi v. Office of the Att'y Gen.*, 594 F. Supp. 2d 12, 14 (D.D.C. 2009) (dismissing claim against individual defendant because "a *Bivens* action is not viable as a remedy for FOIA violations, and the FOIA does not permit claims against individual federal officers"), *aff'd*, 2010 WL 2574048 (D.C. Cir. June 2, 2010) (per curiam).

Plaintiff's decision to sue Mr. Musk and Ms. Gleason in their purported "official" capacities does not change the outcome. *Competitive Enter.*, 643 F. Supp. 3d at 126–27 (suing a person in an official capacity "does not morph an individual into an agency").

Claims against Mr. Musk and Ms. Gleason arising out of FOIA should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for this additional reason.

### III.    Plaintiff Is Not Without Recourse.

USDS's status as an entity that is not subject to FOIA does not interfere with Plaintiff's ability to obtain records concerning agency activities.  For instance, Plaintiff is free to submit FOIA requests to any agency concerning the work of Agency DOGE Teams.  Any agency records responsive to these requests that do not fall within one of FOIA's exemptions can be obtained from the relevant agencies themselves.  But FOIA does not compel the disclosure of documents from EOP entities, like USDS, that are not agencies for purposes of the statute.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the USDS Defendants from Plaintiff's Second Amended Complaint.

DATED: May 23, 2025                     Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General
                                        Civil Division

                                        MARCIA BERMAN
                                        Assistant Director
                                        Federal Programs Branch

                                        */s/ Marianne F. Kies*
                                        MARIANNE F. KIES
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 353-1819
                                        Fax: (202) 616-8470
                                        Marianne.F.Kies@usdoj.gov

                                        *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 23, 2025, I electronically filed the foregoing and thereby caused a copy to be served on counsel of record.

*/s/ Marianne F. Kies*
MARIANNE F. KIES