**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| *Plaintiff*, | Civil Action No: 1:25-cv-00165-BAH |
| v. | |
| OFFICE OF MANAGEMENT AND BUDGET, et al., | |
| *Defendants*. | |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

LEGAL BACKGROUND ................................................................................................... 3

    I.     The Freedom of Information Act ............................................................... 3

    II.    The Administrative Procedure Act ............................................................. 5

FACTUAL BACKGROUND ............................................................................................... 5

    I.     DOGE ......................................................................................................... 6

         A.    The Renaming of USDS to DOGE .............................................. 6

         B.    Allegations and Other Factual Evidence of DOGE's Activities
             and Assigned Tasks ...................................................................... 6

             1.     Plaintiff's allegations and available facts indicate that
                  DOGE is directing other agencies ..................................... 8

             2.     Plaintiff's allegations and available facts indicate that
                  DOGE is engaging in federal work force reduction ......... 9

             3.     Plaintiff's allegations and available facts indicate that
                  DOGE is dismantling budgets and canceling loans ......... 11

             4.     Plaintiff's allegations and available facts indicate that
                  DOGE is reviewing federal regulations for rescission ..... 12

             5.     Plaintiff's allegations and available facts indicate
                  DOGE is acting independently and not being directed
                  by the President or White House ...................................... 12

PROCEDURAL BACKGROUND ...................................................................................... 13

LEGAL STANDARD ........................................................................................................ 15

ARGUMENT ..................................................................................................................... 17

    I.     Plaintiff's Allegations And Existing Facts Do Not Permit Finding
         DOGE Exempt From FOIA As A Matter of Law .................................... 17

A. Plaintiff Has Alleged DOGE Does More Than Advise and Assist the President, and Is Exercising Substantial Independent Authority. ................................................................................................19

B. Application of Three-Part Test Supports Denial of Defendants' Motion to Dismiss the DOGE Defendants...................................................22

　　1. Defendants Have Not Established That As a Matter of Law DOGE Is Not Operationally Close to the President .............23

　　2. Defendants Have Not Established That As a Matter of Law DOGE Has No Self-Contained Structure. ............................24

　　3. Defendants Have Not Established That As a Matter of Law DOGE Lacks Independent Authority Based on the Nature of the Authority Delegated to DOGE and Its Operations. ...................................................................................25

　　　　a. The Nature of the Authority Granted to DOGE .................25

　　　　b. DOGE's Exercise of Substantial Independent Authority ...........................................................................26

II. Plaintiff's Allegations And Existing Facts Do Not Permit Finding DOGE Exempt From The APA As A Matter Of Law, Which Requires Maintaining DOGE Officials As Defendants To Ensure Plaintiff Can Obtain Their Requested APA Relief ........................................................30

A. Plaintiff's Allegations Indicate DOGE Is an Agency for Purposes of the APA ...................................................................................30

B. In Their Official Capacities, Defendants Elon Musk and Amy Gleason Are Responsible for DOGE APA Compliance..............................31

III. DOGE's Activities, Reports And Consultations Cannot Be Obtained From Other Agencies ..............................................................................32

CONCLUSION.................................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Dep't of Labor*,
 No. 25-339 (JDB), 2025 U.S. Dist. LEXIS 72516 (D.D.C. Apr. 16, 2025) ................ 7, 9, 28, 29

*AFL-CIO v. U.S. Dep't of Labor*,
 766 F. Supp. 3d 105 (D.D.C. 2025) ................................................................ passim*

*All. for Retired Ams. v. Bessent*,
 No. 25-0313 (CKK), 2025 U.S. Dist. LEXIS 42019 (D.D.C. Mar. 7, 2025) ................ 1, 6, 8, 29

*Arab v. Blinken*,
 600 F. Supp. 3d 59 (D.D.C. 2022) ................................................................ 16

*Armstrong v. Exec. Office of the President*,
 90 F.3d 553 (D.C. Cir. 1996) .................................................................... 21, 22, 24

*Arpaio v. Obama*,
 797 F.3d 11 (D.C. Cir. 2015) ...................................................................... 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................. 16

*Cause of Action Inst. v. IRS*,
 390 F. Supp. 3d 84 (D.D.C. 2019) ................................................................ 17

*Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*,
 No. 25-cv-511, 2025 U.S. Dist. LEXIS 42869 (D.D.C. Mar. 10, 2025) ...................... passim*

*Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*,
 No. 25-cv-511 (CRC), 2025 U.S. Dist. LEXIS 50506 (D.D.C. Mar. 19, 2025) .............. 8, 11, 19

*Citizens for Resp. & Ethics in Wash. v. U.S. Doge Serv.*,
 No. 25-cv-511 (CRC), 2025 U.S. Dist. LEXIS 93437 (D.D.C. Apr. 15, 2025) ................ passim

*Cotton v. Heyman*,
 63 F.3d 1115 (D.C. Cir. 1995) .................................................................... 26

*Covad Commc'ns Co. v. Bell Atl. Co.*,
 407 F.3d 1220 (D.C. Cir. 2005) .................................................................... 5

*Doe v. Musk*,
  No. 25-cv-462, 2025 U.S. Dist. LEXIS 49603 (D. Md. Mar. 18, 2025) ...............................8, 29

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*,
  466 F. Supp. 3d 100 (D.D.C. 2020) ...........................................................................................17

*Hourani v. PsyberSolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) .............................................................................................5

*In re U.S. DOGE Serv.*,
  No. 25-5130, 2025 U.S. App. LEXIS 11738 (D.C. Cir. May 14, 2025)...............................2, 19

*Islamic Am. Relief Agency v. Gonzales*,
  477 F.3d 728 (D.C. Cir. 2007) ...................................................................................................16

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
  726 F.3d 208 (D.C. Cir. 2013) ...................................................................................................18

*Kissinger v. Reps. Comm. for Freedom of the Press*,
  445 U.S. 136 (1980).....................................................................................................................18

*Legal Eagle, LLC v. NSC Recs. Access & Info. Sec. Mgmt. Directorate*,
  No. 20-1732 (RC), 2021 U.S. Dist. LEXIS 50637 (D.D.C. Mar. 18, 2021)...............................17

*Mahmoodi v. Altman-Winans*,
  No. 24-2010 (BAH), 2025 U.S. Dist. LEXIS 43973 (D.D.C. Mar. 11, 2025)...........................16

*Marin Audubon Soc'y v. FAA*,
  121 F.4th 902 (D.C Cir. 2024) ...................................................................................................26

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) .................................................................................................16

*Martinez v. Bureau of Prisons*,
  444 F.3d 620 (D.C. Cir. 2006) ...................................................................................................31

*Meyer v. Bush*,
  981 F.2d 1288 (D.C. Cir. 1993) ......................................................................................23, 24, 25

*New Mexico v. Musk*,
  No. 25-cv-429 (TSC), 2025 U.S. Dist. LEXIS 100076 (D.D.C. May 27, 2025)................passim

*New York v. Trump*,
  767 F.Supp.3d 44 (S.D.N.Y. 2025) ..............................................................................................9

*Pac. Legal Fdtn. v. Council on Envt'l Quality*,
  636 F.2d 1259 (D.C. Cir. 1980) .......................................................................................20, 26*

*Page v. Comey,*
    137 F.4th 806 (D.C. Cir. 2025) ............................................................... 5

*Perkins Coie LLP v. U.S. Dep't of Justice,*
    No. 25-716 (BAH), 2025 U.S. Dist. LEXIS 84475 (D.D.C. May 2, 2025) ................ 16

*Rudder v. Williams,*
    666 F.3d 790 (D.C. Cir. 2012) ................................................................. 16

*Rushforth v. Council of Econ. Advisors,*
    762 F.2d 1038 (D.C. Cir. 1985) ............................................................... 22

*Ryan v. U.S. Dep't of Justice,*
    617 F.2d 781 (D.C. Cir. 1980) .......................................................... 23, 24*

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) .......................................................................... 17

*Sierra Club v. Andrus,*
    581 F.2d 895 (D.C. Cir. 1978) ............................................................. 21*

*Slate v. Pub. Def. Serv.,*
    31 F. Supp. 3d 277 (D.D.C. 2014) ............................................................ 5

*Soucie v. David,*
    448 F.2d 1067 (D.C. Cir. 1971) .................................................. 20, 21, 26, 30*

*U.S. DOGE Serv. v. Citizens for Resp. & Ethics in Wash.,*
    No. 24-1246, 2025 U.S. LEXIS 2202 (U.S. June 6, 2025) ................................ 2, 19

*Wood v. Moss,*
    572 U.S. 744 (2014) ........................................................................ 16

**Statutes**

Administrative Procedure Act

5 U.S.C. §§ 551–559, 701–706 ................................................................... 1

5 U.S.C. § 551(1) ......................................................................... 5, 30

5 U.S.C. § 551(13) ............................................................................ 5

5 U.S.C. § 701(b)(1) ...................................................................... 5, 30

5 U.S.C. § 701(b)(2) .......................................................................... 5

5 U.S.C. § 706(1) ......................................................................... 3, 5

Freedom of Information Act

5 U.S.C. § 552................................................................................................................1

5 U.S.C. § 552(a)............................................................................................................3

5 U.S.C. § 552(a)(1)...............................................................................................30, 31

5 U.S.C. § 552(a)(1)–(2)................................................................................................2

5 U.S.C. § 552(a)(1)(A)..................................................................................................4

5 U.S.C. § 552(a)(2)..................................................................................................4, 30

5 U.S.C. § 552(a)(3)(A)..................................................................................................4

5 U.S.C. § 552(a)(4)(A)..................................................................................................4

5 U.S.C. § 552(a)(6)(E)..................................................................................................4

5 U.S.C. § 552(b)............................................................................................................3

5 U.S.C. § 552(f)(1)........................................................................................................4

5 U.S.C. § 552(g).............................................................................................2, 4, 30, 31

5 U.S.C. § 552(j)............................................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................15

Fed. R. Civ. P. 12(b)(6) ................................................................................................19

**Executive Orders**

Exec. Order 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025)....................................passim

Exec. Order 14,177, 90 Fed. Reg. 8643 (Jan. 23, 2025).......................................7, 20

Exec. Order 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) .........................7, 10, 21, 32

Exec. Order 14,218, 90 Fed. Reg. 10,581 (Feb. 19, 2025) .................................... 11

Exec. Order 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025) .................................... 11

Exec. Order 14219, 90 Fed. Reg. 10,583 (Feb. 19, 2025) ................................................... 12

**Federal Register Notices**

86 Fed. Reg. 68,287 (Dec. 1, 2021) .............................................................................. 22

87 Fed. Reg. 19,713 (Apr. 5, 2022) ............................................................................. 22

**Other Authorities**

Cambridge Dictionary, https://dictionary.cambridge.org ................................................ 25

**INTRODUCTION**

Plaintiff's Second Amended Complaint more than sufficiently alleges, and an overwhelming volume of publicly available information further indicates, that the Department of Government Efficiency, formerly the United States Digital Service (USDS) and now also referred to as the United States DOGE Service [hereafter, collectively DOGE][1] is doing far more than merely advising and assisting the President, as Defendants insist in seeking dismissal of Plaintiff's claims against the DOGE Defendants. Defs.' Mem. Supp. Partial Mot. to Dismiss (MTD), Dkt. No. 22-1. As Plaintiff alleges, from dismantling budgets, firing workers, canceling loans, identifying federal regulations for rescission, and otherwise directing other agencies, DOGE has led tremendous efforts to dismantle, disrupt, and otherwise alter the federal government. *See* 2d Am. Compl. ¶¶ 18–19, 49–61, Dkt. No. 20. Indeed, these facts are borne out by other lawsuits, government officials' public statements, news reports, and the seemingly stark reality that DOGE is following Silicon Valley's "Move Fast and Break Things" motto. *Cf., All. for Retired Ams. v. Bessent*, No. 25-0313 (CKK), 2025 U.S. Dist. LEXIS 42019, at *1 (D.D.C. Mar. 7, 2025) (explaining credo). The Court therefore cannot decide now that, as a matter of law, DOGE is *not* an agency and thus subject to neither the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, nor the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706.

Indeed, earlier this month, the U.S. Supreme Court issued a ruling in *United States DOGE Service v. Citizens for Responsibility and Ethics in Washington* that cannot be reconciled with Defendants' arguments here that the question of DOGE's agency status under FOIA can be

---

[1] The entity is also sometimes referred to as the United States DOGE Service (USDS) and references to USDS abound in other lawsuits, but here Plaintiff uses "DOGE." The "DOGE Defendants" are DOGE, the former USDS, the DOGE Temporary Organization (DOGETO), as well as officials Mr. Musk and Ms. Gleason, who are Defendants for purposes of Plaintiff's APA claim. 2d Am. Comp. ¶¶ 18-21, 80-83.

decided as a matter of law on Executive Orders alone. *U.S. DOGE Serv. v. Citizens for Resp. & Ethics in Wash.* (CREW), No. 24-1246, 2025 U.S. LEXIS 2202, at *1 (U.S. June 6, 2025). In that case, after the district court granted the Plaintiff's motion for limited discovery on DOGE's agency status, *Citizens for Resp. & Ethics in Wash. v. U.S. Doge Serv.*, No. 25-cv-511 (CRC), 2025 U.S. Dist. LEXIS 93437, at *2 (D.D.C. Apr. 15, 2025) [hereinafter *CREW III*], and the Court of Appeals for the D.C. Circuit declined to issue a writ of mandamus to halt discovery, *In re U.S. DOGE Serv.*, No. 25-5130, 2025 U.S. App. LEXIS 11738, at *1–5 (D.C. Cir. May 14, 2025), the Supreme Court issued an order that appears to agree that it would not be appropriate to resolve DOGE's status as a matter of law by looking solely at the Executive Orders, which Defendants ask the Court to rely on here. Rather, the Supreme Court directed the Court of Appeals to narrow the scope of allowable discovery to focus on DOGE's (there referred to as USDS) substantive decision-making rather than simply its "ability to persuade." *U.S. DOGE Serv. v. CREW*, 2025 U.S. LEXIS 2202, at *1. If DOGE is not a FOIA agency as a matter of law, there would have been no reason to authorize any discovery, and thus the Court here should similarly conclude this issue cannot be resolved as a matter of law.

However, this case is not just about whether DOGE is an agency for purposes of FOIA, but it also concerns violations of the APA, which will also necessitate finding DOGE is an agency for APA purposes. 2d Am. Compl. ¶¶ 80–83. FOIA places several mandates on agencies, including that they affirmatively disclose certain information and inform the public as to the various categories of information available for public scrutiny and the specific means of requesting information under FOIA. 5 U.S.C. § 552(a)(1)–(2), (g). Plaintiff here alleges that DOGE Defendants' failure to comply with these additional mandates violates the Act and constitutes agency action that has been unlawfully withheld and unreasonably delayed, in

violation of section 706(1) of the APA, 5 U.S.C. § 706(1). 2d Am. Compl. ¶¶ 80–83. Moreover,

because these obligations can only be enforced through the APA—not FOIA—officials Mr.

Musk[2] and Ms. Gleason are necessary defendants for issuance of APA relief.

In sum, Defendants fail to provide a valid basis for dismissing either the FOIA or the APA

claims against the DOGE Defendants. As another member of this court explained, DOGE's denial

that it is an agency "appears to come from a desire to escape the obligations that accompany

agencyhood," including "subjection to FOIA" and the APA, while "reaping only its benefits" in

connection with other statutes that apply to agency status. *AFL-CIO v. U.S. Dep't of Labor*, 766 F.

Supp. 3d 105, 112 (D.D.C. 2025) [hereinafter *AFL-CIO I*]. "And so USDS becomes, on

defendants' view, a Goldilocks entity: not an agency when it is burdensome but an agency when it

is convenient." *Id.* In light of Plaintiff's factual allegations, which must be accepted as true at the

motion to dismiss stage, and the available facts, there is no basis for the Court to decide now that

DOGE may avoid the burdens of agencyhood here. Defendants' Partial Motion to Dismiss should

be denied.

<strong>LEGAL BACKGROUND</strong>

## I.    The Freedom of Information Act

The primary purpose of the Freedom of Information Act (FOIA) is to improve government

transparency and accountability by requiring the disclosure of agency records and information. It

establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or

more narrow statutory exemptions apply, *id*. § 552(b). For purposes of FOIA, an "agency" "as

defined in section 551(1) of this title includes any executive department, military department,

---

[2] Public reporting indicates Mr. Musk may be stepping back or down from DOGE. Plaintiff will substitute him with the appropriate alternate head of DOGE and DOGETO when that individual is identified.

Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id*. § 552(f)(1).

The public may obtain agency records by submitting requests for records directly to the agency. 5 U.S.C. § 552(a)(3)(A). In addition, FOIA imposes a number of affirmative record disclosure obligations, including disclosure of agency "policy and interpretations," "staff manuals and instructions to staff," and copies of records that are frequently requested. *Id.* § 552(a)(2).

Beyond record disclosure, FOIA imposes additional obligations on agencies to facilitate the disclosure of information to the public. Section (a)(1) requires that "[e]ach agency shall separately state and currently publish in the Federal Register for the guidance of the public" various categories of information, including "descriptions of its central and field organization and the established places at which, the employees . . . from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions." 5 U.S.C. § 552(a)(1)(A). Section (g) requires each agency to "prepare and make available for public inspection in an electronic format, reference material or a guide for requesting records or information from the agency," including "(1) an index of all major information systems; (2) a description of major information and record locator systems maintained by the agency; and (3) a handbook for obtaining various types and categories of public information from the agency" under FOIA. *Id*. § 552(g). Agencies must issue regulations that specify how to request fee waivers in connection with requests for specific records, *id.* § 552(a)(4)(A), and regulations providing for expedited processing of requests for records, *id*. § 552(a)(6)(E). Each agency is also required to "designate a Chief FOIA Officer" who, among other duties, shall "have agency-wide responsibility for efficient and appropriate compliance with this section." *Id*. § 552(j).

## II.    The Administrative Procedure Act

For purposes of the APA, an agency is defined as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" subject to eight exemptions. 5 U.S.C. §§ 551(1), 701(b)(1). Under the APA, federal courts are empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Agency action includes the "failure to act." 5 U.S.C. §§ 551(13), 701(b)(2).

## FACTUAL BACKGROUND

While the focus of the Court's inquiry into Defendants' motion is the adequacy of Plaintiff's Second Amended Complaint, in evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court may also consider relevant Executive Orders, news and online government statements, and judicial decisions and filings, which can be judicially noticed. *See Covad Commc'ns Co. v. Bell Atl. Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (judicial notice is appropriate for public records and facts from other proceedings); *Page v. Comey*, 137 F.4th 806, 814 (D.C. Cir. 2025) ("Courts have acknowledged the appropriateness of taking judicial notice of the public availability of newspaper articles" (citations omitted)); *Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 136 (D.D.C. 2016) ("A court also may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty" (citation omitted)). These materials can be considered without converting Defendants' Rule 12(b)(6) motion into one for summary judgment. *Slate v. Pub. Def. Serv.*, 31 F. Supp. 3d 277, 287–88 (D.D.C. 2014). Accordingly, Plaintiff will refer to these additional materials as well as the Second Amended Complaint in summarizing the relevant facts here.

I.      **DOGE**

A.      **The Renaming of USDS to DOGE**

The original United States Digital Service (USDS) housed within the Office of

Management and Budget (OMB), 2d Am. Compl. ¶ 18, Dkt. No. 20, was "formulated to improve

agency digital services starting with healthcare" and moving on to address "veteran services,

Internal Revenue Service, Social Security, and other federal government programs" such as

"working with the Centers for Disease Control and Prevention during the Covid-19 pandemic to

strengthen public health data capabilities and deliver tests." *Id*. ¶ 49.

On January 20, 2025, USDS was renamed the United States Department of Government

Efficiency (DOGE) Service by Executive Order. 2d Am. Compl. ¶¶ 18, 50; Exec. Order 14,158

§ 3(a), 90 Fed. Reg. 8441 (Jan. 20, 2025). That Order also "established a USDS Administrator

who reports to the White House Chief of Staff," 2d Am. Compl. ¶¶ 50, 21; Exec. Order 14,158

§ 3(b), and a Temporary Organization (DOGETO) that terminates on July 4, 2026. 2d Am. Compl.

¶ 19; Exec. Order 14,158 § 3(b). To date, the federal government has sought to treat DOGE/USDS

and DOGETO as one entity, *All. for Retired Ams. v. Bessent*, No. 25-0313 (CKK), 2025 U.S. Dist.

LEXIS 42019, at *11 (D.D.C. Mar. 7, 2025) ("for present purposes, USDS and the 'U.S. DOGE

Service Temporary Organization' are 'one and the same'" (quoting hearing transcript)), and

Plaintiff refers to these entities, along with the officials named in the Second Amended

Complaint, as "the DOGE Defendants."

B.      **Allegations and Other Factual Evidence of DOGE's Activities and Assigned
Tasks**

Plaintiff alleges the renamed DOGE is charged with "implementing" the President's

DOGE Agenda. 2d Am. Compl. ¶¶ 18, 50, 54; Exec. Order 14,158 § 1; *Citizens for Resp. &*

*Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-cv-511, 2025 U.S. Dist. LEXIS 42869, at *36–37

(D.D.C. Mar. 10, 2025) [hereinafter *CREW I*] ("That order appears to give USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so" (citation omitted)); *AFL-CIO I*, 766 F. Supp. 3d at 112 ("USDS's mission, per the Executive Order, is to 'implement' the President's modernization agenda, not simply to help him form it" (citation omitted)).[3] Executive Order 14,158 calls for the modernization of federal technology and software, and the establishment of DOGE Teams in federal agencies. 2d Am. Compl. ¶¶ 18, 55; Exec. Order 14,158 §§ 1, 3(c), 4. Plaintiff alleges that "DOGE and DOGETO are coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, spending, staffing, and rescinding federal regulations." 2d Am. Compl. ¶ 55.

Plaintiff alleges, and current facts indicate, that DOGE Teams include DOGE "employees 'detailed' to the relevant agency." *AFL-CIO I*, 766 F. Supp. 3d at 110; *see also* 2d Am. Compl. ¶ 55; Exec. Order 14,158 § 3(c) (defining DOGE Teams).[4] As one judge of this Court has explained, the Executive Order does "not limit an agency's DOGE Team membership to employees of that agency," only that the DOGE Teams will be established within the various agencies. *AFL-CIO v. Dep't of Labor*, No. 25-339 (JDB), 2025 U.S. Dist. LEXIS 72516, at *48–49 (D.D.C. Apr. 16, 2025) [hereinafter *AFL-CIO II*]. The Executive Order "speaks in broad terms: the Team must contain 'at least four employees'—without specifying the employer—and can contain 'Special Government Employees, hired or assigned'—without specifying the hirer or assignor." *Id*. It was reported on February 8 that at least 30 people were working for DOGE in at

---

[3] In sharp contrast to the language in Executive Order 14,158, the Order establishing the President's Council of Advisors on Science and Technology clearly sets up that body to "*advise the President* on matters involving science, technology, education, and innovation policy." Exec. Order 14,177, § 3, 90 Fed. Reg. 8643 (Jan. 23, 2025) (emphasis added).

[4] Team Leads are defined as "the leader of the Department of Government Efficiency (DOGE) Team at each agency, as defined in Executive Order 14158." Exec. Order 14,210 § 2(c), 90 Fed. Reg. 9669 (Feb. 11, 2025).

least 15 agencies. Washington Post Staff, *Elon Musk's DOGE has swept into 15 federal agencies. Here's what to know. Staffed by more than 30 engineers, lawyers and others*, Wash. Post, Feb. 8, 2025, https://www.washingtonpost.com/business/2025/02/08/elon-musk-doge-federal-agencies-cuts-employees/ (Exhibit 1).[5]

### 1. Plaintiff's allegations and available facts indicate that DOGE is directing other agencies

Plaintiff alleges that DOGE is "establishing, implementing, and influencing government policy and decisionmaking throughout various agencies in the federal government." 2d Am. Compl. ¶ 56; *see also CREW III*, 2025 U.S. Dist. LEXIS 93437, at *3 (DOGE "has reportedly spearheaded efforts to terminate federal workers, programs, and contracts across the federal government"). Available factual information indicates that the DOGE Teams and/or DOGE staff in other agencies take directions from DOGE. *See, e.g.*, *CREW v. U.S. DOGE Serv.*, No. 25-cv-511 (CRC), 2025 U.S. Dist. LEXIS 50506, at *16–17 (D.D.C. Mar. 19, 2025) [hereinafter *CREW II*] (noting "cases finding that USDS 'has taken numerous actions without any apparent advanced approval by agency leadership'" (citing *Doe v. Musk*, No. 25-cv-462, 2025 U.S. Dist. LEXIS 49603, at *3 (D. Md. Mar. 18, 2025)); *CREW I*, 2025 U.S. Dist. LEXIS 42869, at *38 (concluding statements "suggest that the President and USDS leadership view the department as wielding decision-making authority to make cuts across the federal government").

Several judicial rulings have clarified that DOGE Teams are following DOGE's lead. *See All. for Retired Ams.*, 2025 U.S. Dist. LEXIS 42019, at *33 (summarizing that "Treasury DOGE Team members appear to 'take instruction' about some matters from USDS officials rather than Treasury officials" (citation omitted)). Indeed, in *New York v. Trump*, the court found that DOGE employee "[Thomas] Krause is the DOGE Team Lead at the Treasury Department," 767

---

[5] All Exhibits referenced herein are filed concurrently with and as attachments to this brief.

F.Supp.3d 44, 58 (S.D.N.Y. 2025) (citing Second Krause Decl., ¶¶ 1–2, 11), and Mr. Krause attested that he was placed in his position by USDS/DOGE, "receive[s] high-level policy direction from [USDS/DOGE]," and that USDS/DOGE recommended an individual to be the "Treasury DOGE Team's technical team member," Second Krause Decl., ¶¶ 1–2, 4, 3, *New York v. Trump*, No. 25-cv-01144, Dkt. No. 33 (Exhibit 2). Similarly, in *AFL-CIO II*, "[a]ccording to the employee, DOL leadership had instructed employees that when USDS 'visit[s] DOL, they are to do whatever' USDS asks and give USDS 'access to any DOL system [it] requested access to'— without questions or regard to 'any security protocols.'" 2025 U.S. Dist. LEXIS 72516, at *6 (second and third alterations in original).[6]

### 2. Plaintiff's allegations and available facts indicate that DOGE is engaging in federal work force reduction

Plaintiff alleges that "DOGE is also engaged in 'workforce optimization'" or federal workforce reductions "[f]ollowing a February 11, 2025, Executive Order," 2d Am. Compl. ¶ 52, and specifically notes the staff cuts made at the U.S. Agency for International Development (USAID). *Id.* ¶ 58; John Hudson, *A career official tried to undo Trump's purge at USAID. He was then purged, too*, Wash. Post, Jan. 30, 2025, https://www.washingtonpost.com/national-security/2025/01/30/usaid-trump-purge-foreign-assistance-freeze/ (Exhibit 3) ("'DOGE instructed me to violate the due process of our employees by issuing immediate termination notices to a group of employees without due process,' wrote Nicholas Gottlieb, the director of employee and labor relations at USAID"). Plaintiff further alleges that, at DOGE's direction, "hundreds or in some cases thousands of federal employees los[t] their jobs at federal agencies that are critical for implementations of our environmental laws and management of public lands." 2d Am. Compl.

---

[6] A component of DOGE is the DOGE staff operating on the DOGE Teams. Thus, contrary to Defendants' assertion that the DOGE Teams are the only entity acting, Defs.' MTD at 20, DOGE staff appear—based on the facts currently known—to be acting on DOGE's behalf.

¶ 59; *see also CREW I*, 2025 U.S. Dist. LEXIS 42869, at *37–38 (noting that the President

"reportedly ordered cabinet secretaries to cooperate with DOGE on staffing" (citing news

article)).

Plaintiff also alleges that DOGE's "work to reduce federal staff" has "led to or contributed

to approximately 2,300 federal probationary workers at the Department of the Interior being

terminated." 2d Am. Compl. ¶ 59. Public statements from government officials indicate DOGE is

firing federal workers. Mr. Musk wrote on social media, "Delete [the Consumer Financial

Protection Bureau]. There are too many duplicative regulatory agencies." Elon Musk

(@elonmusk), X (Nov. 26, 2024), https://x.com/elonmusk/status/1861644897490751865 (Exhibit

4). These efforts are consistent with Executive Order 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025),

which charges DOGE with "workforce optimization," including hiring plans and decisions. *See*

*CREW I*, 2025 U.S. Dist. LEXIS 42869, at *36 (concluding Executive Order "grants the USDS

Team Lead the power to keep vacant career positions open unless an agency overrides their

decision" and "appears to contemplate that this authority will be exercised independent of the

President"); *see also* Hannah Natanson and Chris Dehghanpoor, *Records show how DOGE*

*planned Trump's DEI purge —and who gets fired next*, Feb. 15, 2025,

https://www.washingtonpost.com/nation/2025/02/15/doge-fire-federal-employees-trump-dei/

(Exhibit 5) ("A team of workers from the U.S. DOGE Service developed step-by-step plans for

carrying out President Donald Trump's order to purge" DEI, including plans "to trim staff from

dozens of offices across the executive branch" and "to place on leave, and ultimately fire, scores

of government employees who do not work in DEI roles").

### 3.    Plaintiff's allegations and available facts indicate that DOGE is dismantling budgets and canceling loans

Plaintiff alleges that DOGE is reworking government "spending," 2d Am. Compl. ¶ 55, and "effectively shuttered" USAID. *Id.* ¶ 58. Indeed, "[Mr.] Musk also took credit for the cuts at USAID, boasting: 'We spent the weekend feeding USAID into the wood chipper.'" *CREW I*, 2025 U.S. Dist. LEXIS 42869, at *37 (citing Elon Musk social media post). During a Cabinet meeting, Musk admitted, "We [DOGE] will make mistakes. We won't be perfect" and noted the accidental cancelling of Ebola prevention. Marin Scotten, *Elon Musk Casually Admits DOGE Chaos Was All One Big Mistake*, New Republic (Feb. 26, 2025), https://newrepublic.com/post/192022/elon-musk-admits-doge-chaos-mistake (Exhibit 6).

Other courts have found that DOGE has canceled government contracts and reduced budgets. *See, e.g., CREW I*, 2025 U.S. Dist. LEXIS 42869, at *38 (DOGE "eliminated 104 DEI-related contracts" and terminated 89 Department of Education contracts, which "would seem to require substantial authority," and "USDS reportedly is leading the charge on these actions, not merely advising others to carry them out"); *CREW II*, 2025 U.S. Dist. LEXIS 50506, at *16–17 (DOGE cut "billions of dollars of funding from the National Institutes of Health to universities and research organizations'" (citation omitted)); *New Mexico v. Musk*, No. 25-cv-429 (TSC), 2025 U.S. Dist. LEXIS 100076, at *26 (D.D.C. May 27, 2025) (because of DOGE "public universities and agencies remain unable to access federal funds" (citations omitted)). These cuts may continue as several Executive Orders call on DOGE to engage in various facets of the federal government including funding reviews, federal contracts, and federal travel. Exec. Order 14,222 § 3, 90 Fed. Reg. 11,095 (Feb. 26, 2025) (requiring DOGE to engage on federal government contracting and travel); Exec. Order 14,218 § 2, 90 Fed. Reg. 10,581 (Feb. 19, 2025) (calling on DOGE and others to "identify all other sources of Federal funding for illegal aliens" and address them).

11

### 4. Plaintiff's allegations and available facts indicate that DOGE is reviewing federal regulations for rescission

Plaintiff alleges that "DOGE is also engaged in the review and recission of federal regulations." 2d Am. Compl. ¶ 53. Executive Order 14219 engages DOGE in the review and recission of federal regulations. 90 Fed. Reg. 10,583 (Feb. 19, 2025). Public statements indicate that DOGE is engaged in this work. For example, a DOGE social media post announced a DOGE website page tracking the recission of regulations and guidance. DOGE (@DOGE), X, *Introducing the DOGE Deregulation Leaderboard!*, (May 13, 2025), https://x.com/DOGE/status/1922355901161242937 (Exhibit 7). The website indicates 1.7 million words have been deleted from regulations and guidance documents. DOGE, *Deregulation Leaderboard*, doge.gov/regulations (last visited June 19, 2025) (Exhibit 8).

### 5. Plaintiff's allegations and available facts indicate DOGE is acting independently and not being directed by the President or White House

Numerous media statements make it clear that DOGE and Mr. Musk are acting and they are doing so on their own direction. According to the Wall Street Journal, "[f]or several weeks, top Trump aides regularly learned from news reports or cabinet secretaries what DOGE was doing—even when the cost-cutting department laid off hundreds of people or sought sensitive data from agencies" and Mr. Musk was reported to "believ[e] the White House shouldn't control his team at DOGE." Josh Dawsey, *Inside Trump and Musk's Complicated Relationship*, Wall St. J., May 30, 2025, https://www.wsj.com/politics/policy/trump-elon-musk-relationship-64773ad1 (Exhibit 9). Another article indicates that people close to the President stated that the President "is not closely monitoring Musk's moves." Isaac Arnsdorf and Jacqueline Alemany, *Trump, Musk wage two-front war as donor does president's 'dirty work'*, Wash. Post, Feb. 4, 2025, https://www.washingtonpost.com/politics/2025/02/03/trump-musk-president-role/ (Exhibit 10).

In sum, Plaintiff has sufficiently alleged, and the available facts support, that the DOGE Defendants are working at their own direction across multiple agencies to rework and reconfigure agency data, technology, spending, and staffing as well as to rescind federal regulations. They are also establishing, implementing, and influencing government policy and decision-making throughout various agencies in the federal government. Overall, Plaintiff has sufficiently alleged the acts of the DOGE Defendants purportedly to increase efficiency and reduce alleged "government waste" are independent from Presidential discretion and that DOGE is exercising substantial independent authority.

## PROCEDURAL BACKGROUND

Plaintiff filed this case on January 20, 2025, seeking to compel compliance with FOIA regarding certain transition documents that concern OMB's key functions and duties as well as records regarding, among other matters, the staffing, calendars, and communications of DOGE and DOGETO. These records are important to Plaintiff in light of media reports suggesting these entities were reviewing federal agency staffing and regulations with direct implications for air and water quality; climate change, imperiled plants and wildlife; public lands; and environmental justice. Complaint ¶¶ 1–5, Dkt. No. 1.

Following the official creation of DOGE and DOGETO, Plaintiff submitted additional FOIA requests on January 27, 2025, seeking additional information regarding DOGE and DOGETO's efforts to dismantle and restructure the federal government. Am. Complaint ¶¶ 49–77, Dkt. No. 9. These requests were sent to OMB due to DOGE and DOGETO failing to provide the public with any information regarding the appropriate method or means for submitting a FOIA request. *Id.* ¶ 65. Following concerns from the government that in so fashioning these requests Plaintiff failed to exhaust its administrative remedies (given the government's view that DOGE is

13

not a subcomponent of OMB), Joint Mot. to Suspend 2–3, Dkt. No. 17, Plaintiff submitted four

new requests on March 13, 2025. Two requests were specifically directed to DOGE and two were

specifically directed to DOGETO. The first two FOIA requests, one directed to DOGE and the

other to DOGETO, sought the following:

> 1. Any updated or new staff directory for the U.S. DOGE Service and/or the U.S. DOGE Service Temporary Organization;

> 2. The calendar schedules, including but not limited to travel and/or meeting schedules, of all individuals whose status is either a volunteer or paid federal employee within the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization since January 20, 2025;

> 3. All emails, direct messages, and messages via other messenger apps (e.g., Signal, WhatsApp, and Telegram) between any individual who is either a volunteer or paid federal employee within the U.S. DOGE Service Temporary Organization or a paid employee within the U.S. DOGE Service, and any entities outside of the federal government (emails ending with a suffix other than ".gov", including but not limited to @tesla.com, @spacex.com, @x.com, @neuralink.com, or @starlinkworld.com or any email representing an individual employed during the Presidential transition period from the entity known as the "Department of Government Efficiency");

> 4. All emails to or from [a list of 32 individuals and their related "@doge.eop.gov" emails]

> 5. All emails to or from erm71@who.eop.gov ;

> 6. All emails to or from Katie Miller, katie.r.miller@who.eop.gov to the extent this individual now works in the U.S. DOGE Service Temporary Organization or the U.S. DOGE Service; and

> 5. All emails to or from White House Deputy Chief of Staff Stephen Miller.

2d Am. Comp. ¶ 67. The third and fourth FOIA requests, one to DOGE and one to DOGETO,

sought the following:

> 1. Any updated staff directory for DOGE and DOGE teams;

> 2. All planned or proposed staffing changes at any environmental agencies including but not limited to: Department of Interior and its sub-units; Department of Energy and its sub-units; U.S. Environmental Protection

> Agency; National Oceanic and Atmospheric Administration; and the U.S. Forest Service; and
>
> 3. All planned or proposed rescissions or modifications of environmental regulations, including those identified at any point in the process outlined in Executive Order 14219 (Feb. 19, 2025), implemented solely or jointly by environmental agencies including but not limited to: Department of Interior and its sub-units; Department of Energy and its sub-units; U.S. Environmental Protection Agency; National Oceanic and Atmospheric Administration; and the U.S. Forest Service.

*Id.* Subsequently, on March 21, 2025, the parties filed a Joint Motion to suspend Defendants' deadline to respond to the Amended Complaint to allow Plaintiff to substitute the new FOIAs into this case. Joint Mot. to Suspend, Dkt. No. 17. In a subsequent Minute Order, the Court directed Plaintiff to file any amended Complaint concerning the new FOIAs by April 21, 2025. Min. Order (Mar. 25, 2025). Plaintiff filed a motion to do so on April 21, Dkt. No. 19, which the Court granted by Minute Order on April 23, and the Parties then moved the Court for a schedule to resolve Defendants' forthcoming motion to dismiss. Joint Mot. for Briefing Schedule, Dkt. No. 21. The Court granted that motion by Minute Order on April 30. Defendants filed a Partial Motion to Dismiss and Plaintiff now responds.[7]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This rule 'does not require detailed factual allegations, but it demands more than an unadorned, the-

---

[7] Defendants cursorily assert that Plaintiff's FOIA claims concerning the Office of Management and Budget (OMB) are somehow automatically stayed pending resolution of Defendants' partial motion to dismiss. Defs.' MTD at 1 n.1. While the caselaw Defendants rely on makes clear this question is unresolved in this Circuit, Defendants ignore the more important issue: whether OMB is continuing to process Plaintiff's time-sensitive FOIA requests to OMB. Accordingly, given the importance of the requested information, Plaintiff respectfully requests that the Court direct that OMB provide Plaintiff with responsive records within 14 days after the Partial Motion to Dismiss has been resolved.

defendant-unlawfully-harmed-me accusation.'" *Perkins Coie LLP v. U.S. Dep't of Justice*, No. 25-716 (BAH), 2025 U.S. Dist. LEXIS 84475, at *44 (D.D.C. May 2, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Rule 8 provisions taken together "'underscore the emphasis placed on clarity and brevity by the federal pleading rules,' and to 'give the defendants fair notice of what the claim is and the grounds upon which it rests.'" *Id.* at *44 (citations omitted).

Further, as this Court has described, under Federal Rule of Civil Procedure 12(b)(6):

> [T]he "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "merely consistent with a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions, nor do [they] accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

*Arab v. Blinken*, 600 F. Supp. 3d 59, 65 (D.D.C. 2022) (alterations in original). "In determining whether a complaint fails to state a claim, although a court must review the whole complaint, courts are limited to 'consider[ing] only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" *Mahmoodi v. Altman-Winans*, No. 24-2010 (BAH), 2025 U.S. Dist. LEXIS 43973, at *7–8 (D.D.C. Mar. 11, 2025) (alterations in original) (first citing *Twombly*, 550 U.S. at 555, then quoting *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271–72 (D.C. Cir. 2019)).

"A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim." *Legal Eagle,*

*LLC v. NSC Recs. Access & Info. Sec. Mgmt. Directorate*, No. 20-1732 (RC), 2021 U.S. Dist. LEXIS 50637, at \*7 (D.D.C. Mar. 18, 2021) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). This is especially true in a FOIA suit. *Cause of Action Inst. v. IRS*, 390 F. Supp. 3d 84, 88, 92 (D.D.C. 2019) (explaining "it is rare in FOIA cases for a court to grant a Rule 12(b)(6) motion to dismiss that assails the merits of the plaintiff's pleading"). Here, Plaintiff has presented sufficient allegations that Defendants' motion to dismiss must be denied.[8]

## ARGUMENT

While "[t]he APA and FOIA define 'agency' differently," *Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 107 (D.D.C. 2020), Plaintiff alleges sufficient facts to deny Defendants' Partial Motion to Dismiss under both statutes. DOGE's structure, authority, independence from the President, and substantial activities clearly suggest it is an agency under both laws. Allowing this matter to proceed against the DOGE Defendants is critical to ensure that information about DOGE's work is disclosed publicly under FOIA. It is also essential that the officials overseeing DOGE can be held accountable under the APA for ensuring DOGE complies with FOIA's other obligations on agencies, obligations that cannot be enforced under FOIA only the APA. As discussed below, at minimum the Court should permit discovery before resolving Defendants' motion if it is determined that additional factual development is required.

## I. Plaintiff's Allegations And Existing Facts Do Not Permit Finding DOGE Exempt From FOIA As A Matter Of Law.

Defendants' Partial Motion to Dismiss the FOIA claims against the DOGE Defendants should be denied. Under any interpretation of the meaning of "agency" under FOIA, the current

---

[8] Defendants' argument that the Court can decide on the current record whether DOGE is an agency, Defs.' MTD at 10, is inaccurate. Indeed, several preliminary rulings indicate that DOGE is an agency. *See infra* at 18–19. By contrast, in the cases on which Defendants rely, a contrary finding of non-agency status had been rendered.

allegations—especially when paired with existing factual information about DOGE—supports

denying Defendants' motion. The Complaint here and publicly available records, news articles,

and statements from government officials all demonstrate that Plaintiff has put forth sufficient

allegations that DOGE has substantial independent authority to qualify as an agency under FOIA

and to deny Defendants' motion.

For purposes of FOIA, an "agency" includes "any executive department . . . or other

establishment in the executive branch of the Government (including the Executive Office of the

President)." 5 U.S.C. § 552(f)(1). Despite the plain wording of FOIA, in *Kissinger v. Reporters*

*Committee for Freedom of the Press*, the Supreme Court held that "Congress did not intend the

word 'agency' to include the President, his 'immediate personal staff[,] or units in the Executive

Office whose sole function is to advise and assist the President.'" *Judicial Watch, Inc. v. U.S.*

*Secret Serv*., 726 F.3d 208, 216 (D.C. Cir. 2013) (alteration in original) (quoting *Kissinger v.*

*Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980)). Thus, the question for units

within the Executive Office—such as DOGE—is whether they solely advise the President or

have other functions.

Defendants' insistence DOGE is not an agency is contrary to Plaintiff's allegations and

available facts about DOGE's actions. Indeed, several other judges have preliminarily ruled

DOGE likely *is* an agency. *See AFL-CIO I*, 766 F. Supp. 3d at 112 ("But action—as contrasted

with mere advice and assistance—is precisely what characterizes agencies for purposes of the

other statutes. . . . [O]n the record as it currently stands and with limited briefing on the issue,"

DOGE is an agency); *CREW I*, 2025 U.S. Dist. LEXIS 42869, at *40 ("USDS is likely

exercising substantial independent authority much greater than other EOP components held to be

covered by FOIA"). Moreover, as noted, the Court of Appeals for the D.C. Circuit recently

denied a writ of mandamus seeking to stop discovery into DOGE's agency status under FOIA, and the Supreme Court called only for a narrowing of that discovery—neither denying discovery nor that DOGE is an agency for purposes of FOIA. *In re U.S. DOGE Serv*., 2025 U.S. App. LEXIS 11738, at \*1–5; *U.S. DOGE Serv. v. CREW*, 2025 U.S. LEXIS 2202, at \*1. All these facts and developments demonstrate the motion to dismiss must be denied.

### A. Plaintiff Has Alleged DOGE Does More Than Advise and Assist the President, and Is Exercising Substantial Independent Authority.

Plaintiff's allegations and judicially noticeable facts all indicate that DOGE is acting independently, and not merely advising the President, such that denial of Defendants' motion is warranted. While Defendants cite language helpful to them from relevant Executive Orders, Plaintiff's allegations, the plain language of the relevant Executive Orders, the wide discretion the Executive Orders offer DOGE Defendants, interpretation of the Executive Orders by other judges as well as relevant media accounts and sworn statements by government officials about DOGE's activities all support denying Defendants' motion to dismiss the DOGE Defendants.

Plaintiff has put forth detailed allegations of DOGE's activities, based on currently available information. *See* 2d Am. Compl. ¶¶ 18–19, 49–66. As another judge of this Court has found, DOGE's actions "demonstrate its substantial authority over vast swathes of the federal government." *CREW I*, 2025 U.S. Dist. LEXIS 42869, at \*38; *accord CREW II*, 2025 U.S. Dist. LEXIS 50506, at \*4 ("USDS is likely subject to FOIA because it is endowed with and is apparently exercising 'substantial authority independent of the President'" (quoting *CREW I*, 2025 U.S. Dist. LEXIS 42869, at \*35); *see also New Mexico v. Musk*, 2025 U.S. Dist. LEXIS 100076, at \*50 (noting allegations "that Musk directs DOGE personnel within seventeen agencies, and those personnel have accessed and edited sensitive data, terminated contracts, transferred or cancelled leases, taken down websites, and placed employees on leave").

19

As a threshold matter, the Executive Orders creating DOGE do not set it up merely to advise the President, as Defendants suggest. *Compare* Exec. Order 14,158 § 1 ("This Executive Order establishes the Department of Government Efficiency *to implement* the President's DOGE Agenda" (emphasis added)) *with* Exec. Order 14,177 § 3 (establishing Council to "*advise* the President on matters involving science, technology, education, and innovation policy" (emphasis added)). Instead, DOGE, its Administrator, and the DOGE Teams are assigned broad authority. *Supra* at 6–9. Moreover, Plaintiff alleges, and available factual information indicates, that DOGE is using this authority to direct other agencies, *supra* at 8–9; reduce the federal workforce, *supra* at 7; cancel contracts and grants and shrink budgets, *supra* at 11, all without any likely knowledge or oversight from the President, *supra* at 12–13. Given these allegations, the Court cannot determine now, as a matter of law, that DOGE is *not* an agency.

Indeed, these allegations and available facts regarding DOGE's actions and its authority to act indicate it is akin to those units of the Executive Office of the President—namely the Council on Environmental Quality (CEQ), the Office of Science and Technology (OST), and OMB—that have been found to be agencies for purposes of FOIA. As the D.C. Circuit explained in *Armstrong v. Executive Office of the President*,

> In *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259, 1262–63 (D.C. Cir. 1980), we held that the Council on Environmental Quality is an agency because of its independent authority to "issue guidelines to federal agencies," "coordinate federal programs," and oversee certain activities of other federal agencies. The Office of Science and Technology is within the ambit of the FOIA, notwithstanding its proximity to the President, because it has independent authority to evaluate federal scientific programs, initiate and support research, and award scholarships. *Soucie*, 448 F.2d at 1075. The Office of Management and Budget is a FOIA agency, in part because it has a statutory duty to provide budget information to the Congress. *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978).

90 F.3d 553, 559 (D.C. Cir. 1996). Plaintiff's allegations and available factual information indicate that, like these agencies, DOGE is issuing guidelines, *see, e.g.,* Exec. Order 14,210 § 3 (discussing hiring guidelines), coordinating certain programs, *id.*, canceling grants and contracts, *supra* at 11, and overseeing and evaluating agency activities, *supra* at 8–9. Moreover, DOGE is reducing the federal workforce and reviewing federal regulations for recission. *Supra* at 9–12.

In *Soucie v. David*, the D.C. Circuit explained, "[i]f the OST's sole function were to advise and assist the President, that might be taken as an indication that the OST is part of the President's staff and not a separate agency. In addition to that function, however, the OST inherited from the National Science Foundation the function of evaluating federal programs." 448 F.2d 1067, 1075 (D.C. Cir. 1971). Additionally, the fact that OST has a director and deputy director and issued at least one Federal Register notice also supported the conclusion OST was an agency. *Id.* ("OST apparently considered itself an agency subject to the APA, for it published a notice in the Federal Register").

Like OST, Plaintiff here has sufficiently alleged, and available facts further indicate, that DOGE is doing more than merely advising the President. It also has an Administrator and has been directed to evaluate federal programs. 2d Am. Compl. ¶ 18–19, 21; Exec. Order 14,158 §§ 3–4. The fact that DOGE's Administrator is not subject to Senate confirmation, Defs.' MTD at 18–19, is not a determinative factor in establishing it as a non-advisor.[9] Additionally, despite Defendants' claims to the contrary, *see* Defs.' MTD at 19, USDS has issued Federal Register notifications, which specify it is an agency. 87 Fed. Reg. 19,713, 19,713 (Apr. 5, 2022) ("The United States Digital Service (USDS) within the Office of Management and Budget is

---

[9] At least one lawsuit is pending that challenges whether the head and Administrator of DOGE can be occupied by individuals not confirmed by the Senate. *See, e.g., New Mexico v. Musk*, 2025 U.S. Dist. LEXIS 100076.

announcing an opportunity for public comment on a new proposed collection of information by the agency"); 86 Fed. Reg. 68,287, 68,287 (Dec. 1, 2021) (same). The fact USDS has since been renamed DOGE and shifted out of OMB, does not change that it has the structure and authority of an agency, including the apparent ability to publish Federal Register notices.

OST and DOGE stand in contrast to the Council of Economic Advisers, for example, which the D.C. Circuit explained "has no regulatory power or other functions, under either its organic statute or any Executive Order, that would suggest that it exercises independent authority; therefore, it is not a FOIA agency." *Armstrong*, 90 F.3d at 559 (citing *Rushforth v. Council of Econ. Advisors*, 762 F.2d 1038, 1043 (D.C. Cir. 1985)). As discussed more fully below, Plaintiff's allegations and judicially noticeable facts concerning DOGE's efforts to remake the federal government indicate it is wielding substantial independent authority, which makes it impossible for the Court to determine as a matter of law that DOGE is not an agency.

**B.    Application of Three-Part Test Supports Denial of Defendants' Motion to Dismiss the DOGE Defendants**

Consideration of the Circuit's three-part test for agencyhood for entities within the Executive Office of the President, upon which Defendants rely, Defs.' MTD at 14–21, supports denying the motion. That test from "*Meyer* is designed succinctly to capture the court's prior learning on the subject whether a unit within the Executive Office of the President is an agency covered by the FOIA." *Armstrong*, 90 F.3d at 558–59. It calls upon a court to consider "three interrelated factors"—"(1) 'how close operationally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegated' authority." *Id.* at 558 (citation omitted). Applying these factors to DOGE based on Plaintiff's allegations and the currently available facts further demonstrate Defendants' motion fails.

### 1. Defendants Have Not Established That As a Matter of Law DOGE Is Not Operationally Close to the President

Defendants cannot establish as a matter of law that DOGE has such operational proximity to the President to deny it agency status. While it is true that the Administrator of DOGE reports to the White House Chief of Staff, 2d Am. Compl. ¶ 50; Exec. Order 14,158 § 3(b), the Director of OMB reports directly to the President, *Meyer v. Bush*, 981 F.2d 1288, 1295 (D.C. Cir. 1993), and OMB is still considered an agency. While some units of the Executive Office of the President directly serve the President, consist of the President or Vice President and certain cabinet level officials, and undertake issues that have direct proximity to the everyday functioning of the Presidency—which weighs against subjecting them to FOIA—DOGE is not one of those entities. Indeed, even cabinet officers that are close to the President and regularly provide advice have still been found to be subject to FOIA. *Ryan v. U.S. Dep't of Justice*, 617 F.2d 781, 789 (D.C. Cir. 1980) ("Many cabinet officers, like the Attorney General, or the Office of Legal Counsel under him, act as advisors to the President for many of their important functions; yet they are not members of the presidential staff or exclusively presidential advisors and are thus not exempt from FOIA requirements.").

Similarly, many units that assist the President providing security or confidential advice are still nonetheless agencies for FOIA purposes. *See Ryan*, 617 F.2d at 788 ("Documents of the Central Intelligence Agency and the National Security Agency are compiled precisely for the function of advising the President in the solely presidential role of Commander-in-Chief. Yet in many FOIA encounters with NSA and CIA, we have never held or seriously considered that they might not be 'agencies' when acting in this capacity.").[10] In contrast, the directions to DOGE are

---

[10] Indeed in *Ryan*, the Court explained that "the reports under consideration in *Soucie* were requested by the President precisely for advisory purposes, but we did not deem the Office to be a non-agency in that specific context." 617 F.2d at 788.

not merely to advise but to implement, *supra* at 6–8. Looking at the broad range of actions DOGE is allegedly taking and appears from current facts to be taking, *supra* at 6–13, as well as the independent authority DOGE is wielding, *supra* at 12–13, it is clear that DOGE has broad authority. If DOGE had a narrow charge, that would be one thing. However, the sheer delegation of authority to DOGE to re-make the federal government indicates a "likelihood that the responsible entity is vested with some element of discretion and is not just advising or assisting the President." *Armstrong*, 90 F.3d at 565.

### 2. Defendants Have Not Established That As a Matter of Law DOGE Has No Self-Contained Structure.

Unlike some units in the Executive Office of the President that lack structure, DOGE has formal structure consistent with an agency subject to FOIA. DOGE has an Administrator, 2d Am. Compl. ¶ 50; Exec. Order 14,158 § 3(b), and its own staff. Exec. Order 14,158 § 3(c) (describing staffing for the DOGE Teams); *see also supra* at 6 (describing available facts on DOGE staff). This stands in contrast to the Task Force at issue in *Meyer v. Bush*, which lacked a separate staff. 981 F.2d at 1296.

Nonetheless, Defendants heavily emphasize "structure" as being determinative of DOGE's lack of agencyhood and argue that only "department[s]," "corporation[s]," and "other establishment[s]" can qualify as agencies. Defs.' MTD at 11. While the plain language of FOIA supports a broader reading, even construing the meaning of "establishment" indicates DOGE has sufficient "structure" for the Court to assume it is an agency at this stage of the proceedings. In the Cambridge dictionary, "establishment" means "a business or other organization, or the place

where an organization operates."[11] Given the broad meaning of "other organization," Plaintiff

has sufficiently alleged that DOGE satisfies this term.

Moreover, the government's admission that DOGE is an instrumentality in another

lawsuit, and thus an agency for purposes of the Economy Act, *AFL-CIO I*, 766 F. Supp. 3d at 111

("the inclusion of 'instrumentality'—is enough to encompass USDS"), undermines Defendants'

argument here that DOGE is not an establishment. As explained in that case, DOGE does not

"distinguish the Economy Act's definition of agency from similar definitions in other statutes. It

is not clear, for instance, that 'instrumentality' (Economy Act) must be a broader term than

'establishment' (FOIA and Privacy Act) or 'authority' (APA)." *Id.* at 112. The fact DOGE

possesses staff and structure and, as discussed more fully below, is also exercising substantial

independent authority shows that Defendants' attempt to frame DOGE as anything other than an

agency for purposes of FOIA is mistaken.

> **3.    Defendants Have Not Established That As a Matter of Law DOGE Lacks Independent Authority Based on the Nature of the Authority Delegated to DOGE and Its Operations.**
>
> **a.    The Nature of the Authority Granted to DOGE**

Plaintiff's Complaint and currently available facts indicate that DOGE has sufficient

authority to qualify as an agency. Defendants' emphasis on statutory authority (or in their view,

lack thereof), is a non-starter. Defs.' MTD at 11–13. This Circuit focuses on the entity's authority

to act, but that authority need not come from a statute for an entity to qualify as an agency. *See*

*Meyer v. Bush*, 981 F.2d at 1292 (explaining that CEQ is subject to FOIA not because of duties

"enumerated by statute" but because "several executive orders had given it the power to

---

[11] *Establishment*, Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/establishment#google_vignette (last visited
June 18, 2025).

coordinate federal environmental programs and to issue guidelines to federal agencies" and it "had the authority to promulgate regulations");[12] *Soucie*, 448 F.2d at 1073–74 (explaining that "OST, [was] created in 1962 by an executive reorganization plan" to which Congress can object).

Moreover, Defendants' reliance upon *Cotton v. Heyman* is misplaced, since that lawsuit addressed an entity outside the Executive Office of the President that is subject to a different test of agencyhood. 63 F.3d 1115, 1122 (D.C. Cir. 1995) (explaining the application of "a functional approach to an entity not within the President's Executive Office"). As discussed below, the broad array of actions DOGE is alleged to be taking—and is taking based on currently known facts—and has been delegated under various Executive Orders, demonstrates that Defendants' motion to dismiss should be denied.

### b.    DOGE's Exercise of Substantial Independent Authority

Sufficient allegations and factual information have been put forth by Plaintiff to deny Defendants' contention that DOGE lacks substantial independent authority as a matter of law. Defs.' MTD at 17–18. Plaintiff alleges that DOGE "is wielding substantial authority independent of any role advising or assisting the President." 2d Am. Compl. ¶¶ 18–19. In support of this allegation, Plaintiff alleges that DOGE is "reworking and reconfiguring agency data, technology, spending, staffing, and rescinding federal regulations" and is "establishing, implementing, and influencing government policy and decisionmaking." 2d Am. Compl. ¶¶ 55–56. Additionally, the slew of new Executive Orders assigning DOGE tasks, court decisions and public statements on DOGE's activities all support Plaintiff's contention that DOGE has been delegated and is using

---

[12] Defendants impliedly question whether CEQ would still qualify as an agency after the ruling in *Marin Audubon Society v. FAA*, 121 F.4th 902, 908 (D.C Cir. 2024). *See* Defs.' MTD at 18 n.6. CEQ's broad authority, including to issue guidelines to other agencies, answers that question. *Pac. Legal Found. v. Council on Env'tl Quality*, 636 F.2d 1259, 1262–63 (D.C. Cir. 1980).

substantial authority to re-make the federal government and is doing so independent of the President. Supra at 6–13. As Defendants' caselaw notes, this is the "lodestar" of the "agency" test under FOIA, Defs.' MTD at 14, not whether a statute created DOGE.

Plaintiff also alleges, and available facts further indicate, that DOGE has, and has been using, substantial independent authority to implement the current administration's agenda. 2d Am. Compl. ¶¶ 49–66; *CREW III*, 2025 U.S. Dist. LEXIS 93437, at *8 ("evidence in the public record [indicates] that USDS is exercising substantial authority across vast areas of the federal government"). The fact that the DOGE was re-made to "to implement the President's DOGE Agenda," 2d Am. Compl. ¶ 50; Exec. Order 14,158 § 1, is indicative of its independence and broad authority to act. *See CREW I*, 2025 U.S. Dist. LEXIS 42869, at *35 ("the relevant executive orders appear to endow USDS with substantial authority independent of the President" to "implement the President's DOGE Agenda," giving "USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so" (citations omitted)); *AFL-CIO I*, 766 F. Supp. 3d at 112 (noting that DOGE/USDS's mission "is to 'implement' the President's modernization agenda, not simply to help him form it").

Defendants' response to this precedent—that implementing a policy agenda does not equate to substantial independent authority because USDS' responsibilities are "advisory and consultative in nature," Defs.' MTD at 19–20—when placed against the backdrop of DOGE's authority to dismantle the federal government and the actions it has taken to do so, simply fails to hold any water, *supra* at 6–13; *see also New Mexico v. Musk*, 2025 U.S. Dist. LEXIS 100076, at *45 (noting allegations that "Musk influences the operations of at least 17 agencies, the existence of federal programs, employment terms for millions of individuals, federal funding decisions,

and data usage practices"). Plaintiffs' allegations and available facts indicate DOGE is not just advising, consulting, or persuading.

First, Plaintiff alleges DOGE is "establishing, implementing, and influencing government policy and decisionmaking throughout various agencies in the federal government," 2d Am. Compl. ¶ 56. Available factual information confirms this, indicating that other agencies, the DOGE Teams, and DOGE staff in other agencies take direction from DOGE, *supra* at 8–9; *see, e.g., AFL-CIO II*, 2025 U.S. Dist. LEXIS 72516, *6 ("DOL leadership had instructed employees that when USDS 'visit[s] DOL, they are to do whatever' USDS asks").

Second, Plaintiff alleges that DOGE "is also engaged in 'workforce optimization'" or federal workforce reductions, 2d Am. Compl. ¶ 52, and specifically that because of DOGE's direct actions, "hundreds or in some cases thousands of federal employees" lost their jobs "at federal agencies that are critical for implementations of our environmental laws and management of public lands." *Id.* ¶ 59. Plaintiff's allegations are backed by public statements, Executive Orders, and court decisions, *supra* at 9–10; *see, e.g., CREW III*, 2025 U.S. Dist. LEXIS 93437, at *3 (DOGE "has reportedly spearheaded efforts to terminate federal workers, programs, and contracts across the federal government"). Thus, DOGE is supervising, and perhaps engaging in, hiring and firing decisions at federal agencies.

Third, Plaintiff alleges that DOGE is reworking government "spending." 2d Am. Compl. ¶ 55. Available facts and court decisions have found that DOGE has canceled government contracts and reduced budgets, *supra* at 11; *see, e.g. CREW I*, 2025 U.S. Dist. LEXIS 42869, at *38 (USDS eliminated "104 DEI-related contracts" and terminated "89 of the Department of Education's contracts"). Plaintiff also alleges that DOGE "effectively shuttered" USAID, 2d Am. Compl. ¶ 58—an allegation that Mr. Musk's public statements verify. *CREW I*, 2025 U.S. Dist.

LEXIS 42869, at *37 ("[Mr.] Musk also took credit for the cuts at USAID, boasting: 'We spent the weekend feeding USAID into the wood chipper'").

Fourth, Plaintiff alleges that "DOGE is also engaged in the review and recission of federal regulations." 2d Am. Compl. ¶ 53. DOGE's website and public statements verify that efforts to rescind federal regulations are ongoing, *supra* at 12. Thus, available facts indicate that DOGE is not simply advising, consulting, or persuading. Currently available facts indicate that DOGE and Mr. Musk are acting and doing so on their own direction, *supra* at 12–13; *see e.g.*, *Doe v. Musk*, 2025 U.S. Dist. LEXIS 49603, at *9 (laying out instances where "USDS 'has taken numerous actions without any apparent advanced approval by agency leadership'" (citations omitted)). Other federal agencies are being directed to follow and obey DOGE on certain matters. This is the case at least at the Department of Treasury, *All. for Retired Ams.*, 2025 U.S. Dist. LEXIS 42019, at *33, and Department of Labor, *AFL-CIO II*, 2025 U.S. Dist. LEXIS 72516, at *6. DOGE has reached into at least 15 to 17 agencies. Exhibit 1; *New Mexico v. Musk*, 2025 U.S. Dist. LEXIS 100076, at *45. It is making decisions and taking actions on an array of issues fundamental to the functioning of the federal government—including staffing, budgets, travel, contracts, and rulemaking—*CREW III*, 2025 U.S. Dist. LEXIS 93437, at *8, all indicating DOGE's substantial independent authority.

In sum, Defendants cannot establish as a matter of law that DOGE is so close to the President, so unstructured, and so lacking in substantial independent authority that as a matter of law it cannot be an agency. Accordingly, Defendants' motion must be denied.

**II.    Plaintiff's Allegations And Existing Facts Do Not Permit Finding DOGE Exempt From The APA As A Matter Of Law, Which Requires Maintaining DOGE Officials As Defendants To Ensure Plaintiff Can Obtain Their Requested APA Relief**

**A.    Plaintiff's Allegations Indicate DOGE Is an Agency for Purposes of the APA**

Plaintiff also sufficiently alleges the DOGE Defendants are responsible for compliance as an agency for purposes of the APA. Plaintiff alleges DOGE has failed to comply with FOIA's mandatory affirmative disclosure mandates. 2d Am. Compl. ¶¶ 80–83. In order to ensure that DOGE establishes the requisite FOIA procedures, Plaintiff is pursuing an unreasonable delay claim against DOGE under the APA for its failures to act in accordance with FOIA's various mandates. 5 U.S.C. § 552(a)(1), (g). Compliance with FOIA's obligations is critical for informing the public how to obtain records from DOGE. Given DOGE's broad activities and the wide-ranging consequences they are having for the federal government, this compliance is crucial for shedding light on DOGE's activities, including the affirmative disclosures FOIA requires for, *e.g.*, agency "policy and interpretations" and "staff manuals and instructions to staff." *Id.* § 552(a)(2).

Defendants cannot establish as a matter of law that DOGE is not an agency for purposes of the APA. Under the APA, an agency is defined as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" subject to eight exemptions. 5 U.S.C. §§ 551(1), 701(b)(1). As the D.C. Circuit explained in *Soucie*, "[t]he statutory definition of 'agency' [in the APA] is not entirely clear, but the APA apparently confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions." 448 F.2d at 1073 (citations omitted). Given the above discussion under FOIA, Plaintiff will not belabor its briefing on why sufficient facts exist at this stage regarding DOGE's substantial independent authority, *supra* at 6–13, 26–29, to deny Defendants' Partial Motion to Dismiss. Here, the fact that the government  has argued DOGE is an agency for

purposes of the Economy Act and was found to be one, *AFL-CIO I*, 766 F. Supp. 3d at 111–12, is telling. As the judge in that case mused, if DOGE qualifies as an agency under that Act, that has implications for the APA as well. *Id.* Certainly, between Plaintiff's allegations and the available facts, *supra* at 6–13, 26–29, there are sound grounds for denying Defendants' motion to dismiss Plaintiff's APA claim.

### B.    In Their Official Capacities, Defendants Elon Musk and Amy Gleason Are Responsible for DOGE APA Compliance

Officials of DOGE are named as Defendants in this matter in order to effectuate the relief Plaintiff is requesting under the APA—*i.e.*, that the DOGE Defendants have unreasonably delayed in setting up the FOIA operations mandated by that statute for all agencies. 2d Am. Compl. ¶¶ 80–83. Plaintiff's allegations and other information the Court may consider at this stage of the proceedings sufficiently indicate that DOGE may be an agency for purposes of the APA to overcome Defendants' motion to dismiss. *Id.* ¶¶ 49–66. Thus, Plaintiff's second claim should not be dismissed and the agency officials should remain in this case in order to effectuate Plaintiff's requested APA relief, should Plaintiff prevail.

Plaintiff agrees that the individually named Defendants associated with DOGE are not subject to suit over specific FOIA requests. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006). But that does not change the fact that DOGE's agency status under the APA makes agency officials responsible for complying with FOIA's additional mandates, which require specific processes be put in place by the agency heads to comply with FOIA. 5 U.S.C. § 552(a)(1), (g). Because FOIA only allows courts to enjoin agencies from withholding information, Plaintiff's claim that DOGE Defendants are acting contrary to FOIA's process mandates is reviewable under the APA and the individual DOGE officials must be named in order to effectuate the relief requested in the Second Amended Complaint.

**III.    DOGE's Activities, Reports And Consultations Cannot Be Obtained From Other Agencies**

The DOGE Defendants cannot avoid their responsibilities under FOIA and the APA by arguing that other agencies can respond to Plaintiff's FOIA requests. Defs.' MTD at 22. In several Executive Orders, DOGE is tasked with generating specific reports, *see, e.g.* Exec. Order 14,210 § 3(f), and available information indicates DOGE's activities itself are having far ranging consequences on the federal government, *see, e.g.,* Exhibit 5 ("A team of workers from the U.S. DOGE Service developed step-by-step plans for carrying out President Donald Trump's order to purge diversity, equity and inclusion initiatives").

Plaintiff requested, among other things, "planned or proposed staffing changes at any environmental agencies," and "planned or proposed rescissions or modifications of environmental regulations." *Supra* at 15. These DOGE records cannot be obtained from any entity other than DOGE and, it is imperative that these records see the light of day. In particular, DOGE's work to rescind federal regulations has often occurred in secret and public disclosure of these efforts and plans are key to understanding DOGE's plans. Simply put, other agencies are not in a position to produce all the relevant information and records being generated by DOGE that Plaintiff has requested under FOIA.

## CONCLUSION

DOGE's efforts to repeal, rescind, and otherwise eliminate various facets of the federal government in the name of cost-cutting present a substantial risk to air and water, wildlife and nature, climate, public lands, and the environment generally. Given the important budgets, funding, staff, and regulatory protections at issue, it is critical the records regarding DOGE's activities are made readily available under FOIA and that the DOGE Defendants comply with the APA. For all the reasons herein and based on the record before the Court, Plaintiff respectfully

requests the Court deny Defendants' Partial Motion to Dismiss as sufficient allegations exist for this case to proceed beyond Rule 12 proceedings.

Alternatively, should the Court decide that additional factual information is required before the Court can resolve DOGE's agency status, Plaintiff respectfully requests oral argument and the opportunity to take limited discovery. Defendants hold all the relevant information regarding DOGE's actions. Thus, if additional factual development is needed, it would be appropriate to hold the motion to dismiss in abeyance and allow Plaintiff to move for limited discovery, as the Court has authorized in another pending case. *See Am. Oversight v. DOGE*, No. 25-0409, Minute Order of May 23, 2025 (DDC) (permitting motion for limited discovery); *see also id.*, Minute Order of Apr. 2, 2025 (issuing Document Preservation Order). Once responses to Plaintiff's requests are provided, Plaintiff should be permitted to amend its complaint and/or provide further argument in opposition to the motion to dismiss.

Respectfully submitted on June 20, 2025.

s/ *Tanya Sanerib*
Tanya Sanerib (DDC Bar No. 473506)
(206) 379-7363
tsanerib@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211

Howard Crystal (DC Bar No. 446189)
(202) 809-6926
hcrystal@biologicaldiversity.org
Lauren Parker (DC Bar No. 1670885)
(202) 868-1008
lparker@biologicaldiversity.org
Jason Rylander (DDC Bar No. 474995)
(202) 744-2244
jrylander@biologicaldiversity.org
1411 K Street NW,

Washington DC 20005

*Attorneys for Plaintiff*
*Center for Biological Diversity*